TATE v DETROIT RECEIVING HOSPITAL

Docket No. 225833. Submitted December 5, 2001, at Detroit. Decided January 15, 2002, at 9:05 A.M.

Lauren H. Tate, as personal representative of the estate of Robert Hall, deceased, brought an action in the Wayne Circuit Court against Detroit Receiving Hospital, alleging medical malpractice relative to a failure to treat the decedent's urinary tract infection while he was under the care of Dr. David Lavine at the hospital. The court, Isidore B. Torres, J., granted summary disposition for the defendant, ruling Dr. Jack Kaufman, board certified in internal medicine and the plaintiff's expert witness in the affidavit of merit filed with the complaint, was not qualified under MCL 600.2169 to offer testimony as an expert with regard to the appropriate standard of care because Dr. Kaufman, unlike Dr. Lavine, was not board certified in critical care and nephrology in addition to internal medicine. The plaintiff appealed.

The Court of Appeals *held*:

MCL 600.2169(1)(a) provides that if the party against whom or on whose behalf expert testimony on appropriate standard of care is offered is a specialist, the expert witness must specialize at the time of the occurrence that is the basis of the action in the same specialty as the party against whom or on whose behalf the testimony is offered. Where a defendant physician has several board certifications and the alleged malpractice only involves one of these specialties, § 2169 requires only that an expert witness possess the same specialty as that engaged in by the defendant physician during the course of the alleged malpractice.

In this case, the plaintiff alleges that malpractice occurred while the decedent was receiving general care, not critical care or the care of a nephrologist. Therefore, only Dr. Lavine's specialty in internal medicine is involved and Dr. Kaufman's board certification in internal medicine satisfies the requirements of § 2169.

Reversed and remanded for further proceedings.

WITNESSES — EXPERT WITNESSES — MEDICAL MALPRACTICE ACTIONS.

A plaintiff in a medical malpractice action against a physician who is board certified in multiple specialties need not offer an affidavit of merit executed by another physician with the same set of certifica-

tions or offer expert testimony regarding the appropriate standard of care by another physician with the same set of certifications, but need only offer an affidavit of merit and expert testimony by a physician who shares the same specialty as that engaged in by the defendant during the alleged malpractice (MCL 600.2912d, 600.2169).

*Edwards & Jennings, P.C.* (by *Carl R. Edwards*), for the plaintiff.

*Vander Male, Bellamy, Gilchrist, Vande Vusse & Cafferty, P.C.* (by *Bruce A. Vande Vusse* and *Joseph E. Kozely*), for the defendant.

Before: COOPER, P.J., and CAVANAGH and MARKEY, JJ.

COOPER, P.J. Plaintiff appeals as of right the trial court's order granting defendant's motion for summary disposition and dismissing this medical malpractice action. We reverse and remand.

#### I. BACKGROUND FACTS AND PROCEDURAL HISTORY

Robert Hall was admitted to defendant hospital after suffering a stroke. During Hall's hospitalization a urinary catheter was inserted. Shortly thereafter, defendant's employees made a notation on Hall's charts regarding a possible urinary tract infection. However, Hall was transferred from defendant hospital without any treatment for this possible infection. On the day of transfer Hall suffered a seizure and went into a coma. Thereafter, Hall's condition slowly deteriorated and he died approximately a month after his stay at defendant hospital.

Plaintiff filed a complaint against defendant hospital, raising general allegations against defendant's employees and agents. Dr. David Lavine, who supervised certain medical students and residents, treated

Hall. A third-year medical student noted the presence of bacteria in Hall's urine and indicated a concern about urosepsis. When Hall was transferred from defendant hospital, an obstetrics/gynecology resident noted Hall's temperature of 99.2 degrees. Plaintiff argues that these findings indicate that Hall suffered a urinary tract infection that needed medical attention. She asserts that Hall's seizure and ultimate death were the result of this untreated infection.

In August 1997, plaintiff filed a complaint and an affidavit of merit signed by Dr. Jack Kaufman. The affidavit stated that Dr. Kaufman was board certified and a specialist in internal medicine. In February 1999, defendant moved to disqualify Dr. Kaufman from providing opinion testimony or to limit the scope of his opinion testimony. Defendant argued that Dr. Kaufman was not qualified to render testimony against Dr. Lavine under both MRE 702 and MCL 600.2169. Dr. Lavine was board certified in internal medicine, critical care medicine, and nephrology. The trial court ultimately granted defendant's motion, concluding that Dr. Kaufman was not board certified in the same specialties as Dr. Lavine and was therefore unqualified to testify.

Defendant moved for summary disposition pursuant to MCR 2.116(C)(7) and (C)(10). The trial court granted defendant's motion for summary disposition and dismissed plaintiff's complaint.

## II. STANDARDS OF REVIEW

A trial court's decision on a motion for summary disposition is reviewed de novo. *Fane v Detroit Library Comm*, 465 Mich 68, 74; 631 NW2d 678

(2001). In reviewing motions for summary disposition under MCR 2.116(C)(7) and (C)(10), we consider the pleadings, affidavits, depositions, and other documentary evidence submitted by the parties in the light most favorable to the party opposing the motion. See *Horace v City of Pontiac*, 456 Mich 744, 749; 575 NW2d 762 (1998); *Ardt v Titan Ins Co*, 233 Mich App 685, 688; 593 NW2d 215 (1999). Furthermore, statutory construction involves questions of law that are reviewed de novo. *Corley v Detroit Bd of Ed*, 246 Mich App 15, 18; 632 NW2d 147 (2001). Whether a witness is qualified to render an expert opinion and the actual admissibility of the expert's testimony are within the trial court's discretion. *Franzel v Kerr Mfg Co*, 234 Mich App 600, 620; 600 NW2d 66 (1999). Such decisions are reviewed on appeal for an abuse of discretion. *Id.*

### III. ANALYSIS

Plaintiff essentially argues that when a health professional is board certified in several specialties, § 2169 should be read so as to allow an expert to testify if that expert is board certified in the same specialty being practiced by the health professional *at the time* of the alleged malpractice. We agree.

Generally, a trial court determines the need for expert witness testimony pursuant to MRE 702, which provides:

> If the court determines that recognized scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

In malpractice actions, each party is obligated to provide an expert witness to articulate the applicable standard of care involved. MCL 600.2912d(1). Moreover, each party's expert witness must file an affidavit of merit as provided in § 2912d. MCR 2.112(L). Section 2912d describes the contents of an affidavit of merit and states that an attorney must reasonably believe that the expert witness meets the requirements of MCL 600.2169. Section 2169 provides in pertinent part:

> (1) In an action alleging medical malpractice, a person shall not give expert testimony on the appropriate standard of practice or care unless the person is licensed as a health professional in this state or another state and meets the following criteria:

> (a) If the party against whom or on whose behalf the testimony is offered is a specialist, *specializes at the time of the occurrence that is the basis for the action* in the same specialty as the party against whom or on whose behalf the testimony is offered. However, if the party against whom or on whose behalf the testimony is offered is a specialist who is board certified, the expert witness must be a specialist who is board certified in that specialty.

> (b) Subject to subdivision (c), during the year immediately preceding the date of the occurrence that is the basis for the claim or action, devoted a majority of his or her professional time to either or both of the following:

> (i) The active clinical practice of the same health profession in which the party against whom or on whose behalf the testimony is offered is licensed and, if that party is a specialist, the active clinical practice of that specialty.

> (ii) The instruction of students in an accredited health professional school or accredited residency or clinical research program in the same health profession in which the party against whom or on whose behalf the testimony is offered is licensed and, if that party is a specialist, an accredited health professional school or accredited resi-

dency or clinical research program in the same specialty. [Emphasis supplied.]

Furthermore, to determine the qualifications of an expert witness in a medical malpractice case, subsection 2169(2) requires the court to evaluate (a) the witness' educational and professional training, (b) the witness' area of specialization, (c) the length of time the witness has been engaged in the active clinical practice or instruction of the specialty, and (d) the relevancy of the witness' testimony.

According to our Supreme Court in *McDougall v Schanz*, 461 Mich 15, 24-25; 597 NW2d 148 (1999), an expert witness must fulfill the requirements of both § 2169 and MRE 702. Because the statute is more demanding than the evidentiary rule, there may be situations where an expert witness would qualify to testify under MRE 702 but be disqualified under § 2169. *McDougall, supra* at 24-25. In the instant case the trial court based its ruling solely on the fact that Dr. Kaufman was only board certified in internal medicine. The trial court did not address Dr. Kaufman's qualifications under MRE 702. Therefore, our review is limited to the trial court's conclusions concerning Dr. Kaufman's qualifications under § 2169.

The primary goal in statutory interpretation is to determine and give effect to the intent of the Legislature. *Nawrocki v Macomb Co Rd Comm*, 463 Mich 143, 159; 615 NW2d 702 (2000). Courts must look to the plain and unambiguous language of a statute and can only go beyond the statutory language if it is ambiguous. *Id.* In such cases, this Court must seek to give effect to the Legislature's intent through a reasonable construction, considering the purpose of the statute and the object sought to be accomplished.

*Macomb Co Prosecutor v Murphy*, 464 Mich 149, 158; 627 NW2d 247 (2001).

Subsection 2169(1)(a) specifically states that an expert witness must "specialize[] at the time of the occurrence that is the basis for the action" in the same specialty as the defendant physician. The statute further discusses board-certified specialists and requires that experts testifying against or on behalf of such specialists also be "board certified in that specialty." The use of the phrase "at the time of the occurrence that is the basis for the action" clearly indicates that an expert's specialty is limited to the actual malpractice. Moreover, the statute expressly uses the word "specialty," as opposed to "specialties," thereby implying that the specialty requirement is tied to the occurrence of the alleged malpractice and not unrelated specialties that a defendant physician may hold. Indeed, *McDougall, supra* at 24-25, states that "the statute operates to preclude certain witnesses from testifying solely on the basis of the witness' lack of practice or teaching experience in the *relevant* specialty." (Emphasis added.)

The trial court in this case failed to correctly interpret and apply the provisions of § 2169. In fact, we find that the trial court's strained reading of the statute actually defeats its true purpose. The Legislature's intent behind the enactment of § 2169 is clear. As pointed out by our Supreme Court in *McDougall, supra* at 25, n 9, quoting *McDougall v Eliuk*, 218 Mich App 501, 509, n 1; 554 NW2d 56 (1996) (TAYLOR, P.J., dissenting), the Legislature enacted § 2169 to

> make sure that expert witnesses actually practice or teach medicine. In other words, to make sure that experts will have firsthand practical expertise in the subject matter

about which they are testifying. In particular, with the malpractice crisis facing high-risk specialists, such as neurosurgeons, orthopedic surgeons and ob/gyns, this reform is necessary to insure that in malpractice suits against specialists the expert witnesses actually practice in the same specialty. This will protect the integrity of our judicial system by requiring real experts instead of "hired guns."

*McDougall v Schanz* further suggests that § 2169 exists to ensure that "proof of malpractice 'emanate from sources of reliable character as defined by the Legislature.' " *McDougall v Schanz, supra* at 36, quoting *McDougall v Eliuk, supra* at 518 (TAYLOR, P.J., dissenting).

Certainly § 2169 cannot be read or interpreted to require an exact match of every board certification held by a defendant physician. Such a "perfect match" requirement would be an onerous task and in many cases make it virtually impossible to bring a medical malpractice case.[1] Surely the Legislature did not intend to eradicate a plaintiff's ability to bring a meritorious malpractice action against a defendant physician who happens to have board certifications in several different fields. However, this eventuality is exactly what the trial court and defense counsel suggest is permissible under § 2169. Indeed, the trial court stated, and defense counsel agreed at trial, that *McDougall v Schanz* requires "a simple analysis in the sense that you draw the line down the middle of the page and put the qualifications on one side and the

---

[1] For example, if a physician who is board certified in both gynecology and emergency medicine incorrectly sets a broken leg in the emergency room, the case would clearly be within the purview of emergency medicine. Thus, any malpractice in that case would concern the physician's specialty in emergency medicine and have nothing to do with gynecology.

qualifications of the other side, and match them up and if they're not matched up, they're not qualified." However, we do not believe that *McDougall v Schanz* stands for such a proposition. Rather, *McDougall v Schanz* simply declared the constitutionality of § 2169 as substantive law. To further restrict the statute on the basis of the trial court's logic would render an absurd result. Thus, where a defendant physician has several board certifications and the alleged malpractice involves only one of these specialties, § 2169 requires an expert witness to possess the same specialty as that engaged in by the defendant physician during the course of the alleged malpractice.

We are also mindful of the fact that it is plaintiff's theory in this case that the malpractice occurred during the practice of internal medicine and not during the practice of nephrology or critical care.[2] Allowing the defense to assert that either critical care or nephrology were involved in the alleged malpractice would effectively negate plaintiff's theory of the malpractice and thereby render plaintiff's expert unqualified under § 2169. We do not find that § 2169 exists to allow defendants in malpractice cases the opportunity to dictate a plaintiff's theory of the alleged malpractice.

Nonetheless, the facts of this case are clearly distinguishable from other cases that have applied § 2169 and determined that an expert witness was unqualified to testify. For example, *McDougall v*

---

[2] Plaintiff proposes that the malpractice occurred when defendant hospital's employees failed to treat a urinary infection that developed from the placement of a Foley catheter. Plaintiff contends that Hall was not in a critical care unit at the time. Further, plaintiff opines that the malpractice had nothing to do with structural defects in Hall's kidney that would implicate the specialty of nephrology.

*Schanz, supra,* consolidated two cases that addressed § 2169. In the first case, the Court declared that the expert witness was disqualified because he had not recently practiced in the field. *McDougall v Schanz, supra* at 19. In the second case, the *McDougall v Schanz* Court found that the expert did not match the defendant physician's qualifications. *Id.* at 23. However, unlike the case at bar, the expert disqualified in the second case did not have any of the same board certifications as the defendant physician. *Id.*

In this case plaintiff theorizes that the injuries sustained by Hall occurred after defendant hospital's employees failed to treat a urinary tract infection. At the time of this alleged malpractice, plaintiff proposes that Hall was receiving general care and not critical care or the care of a nephrologist. Therefore, only Lavine's specialty in internal medicine was involved. Both Dr. Kaufman and Dr. Lavine are board certified in internal medicine. The fact that Dr. Kaufman lacks board certification in nephrology and critical care is irrelevant because those specialties had nothing to do with the malpractice alleged by plaintiff. Therefore, Dr. Kaufman's and Dr. Lavine's qualifications were matched for purposes of the statute. As such, we find that plaintiff reasonably concluded that Dr. Kaufman's affidavit complied with § 2912d.

Because our findings with regard to this issue are dispositive, we need not address the remainder of plaintiff's issues on appeal.

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.