ROBINS v GARG

Docket No. 256169. Submitted October 19, 2005, at Detroit. Decided
April 4, 2006, at 9:15 a.m. Leave to appeal sought.

Michael Robins, as personal representative of the estate of Ilene
Robins, deceased, brought a medical malpractice action in the
Oakland Circuit Court against Tilak Garg. The plaintiff moved to
strike the defendant's expert witness on the standard of care. The
court, John J. McDonald, J., granted the motion, concluding that
the expert witness was a family practitioner, rather than a general
practitioner like the defendant, and, as a Florida physician, was
not familiar with the standard of care in the geographical area
where the defendant practiced. The court then granted the defen-
dant's summary disposition motion on the grounds (1) that the
expert witness was unqualified to sign the plaintiff's affidavit of
merit and the action was thus not filed within the period of
limitations and (2) that the plaintiff could not prove causation.
The plaintiff appealed.

The Court of Appeals *held*:

1. The trial court abused its discretion by ruling that the
expert witness was not qualified under MCL 600.2912a(1)(a). That
statute requires a plaintiff to show that a defendant who is a
general practitioner failed to provide the plaintiff the recognized
standard of acceptable professional practice or care in the commu-
nity in which the defendant practices or in a similar community.
An expert witness familiar with the standard of care in a commu-
nity may testify concerning the standard of care in that commu-
nity even though the witness has not practiced in the community.
An expert witness who is not local is not required to contact
physicians in the area to determine the applicable standard of care
or whether the community is similar to another. The plaintiff
presented evidence that his witness was familiar with the standard
of care for an area similar to that where the defendant practiced
and practiced medicine similarly to how it is practiced in Michigan,
which qualified the witness to testify under MCL 600.2912a(1)(a).

2. The trial court erred by concluding that the plaintiff's
affidavit of merit was improper under MCL 600.2169 and by
granting summary disposition on the grounds that the period of

limitations had expired. An affidavit of merit must be signed by a health professional who the plaintiff's attorney reasonably believes meets the requirement for an expert witness. If the defendant is a general practitioner, MCL 600.2169(1)(c) requires that the expert witness offering testimony concerning the standard of care must devote a majority of his or her time to clinical practice or teaching as a general practitioner. A general practitioner is a medical practitioner whose practice is not limited to any specific branch of medicine. Family practice, while requiring additional training and leading to board certification, is also not limited to a specific branch of medicine. For the purpose of satisfying the requirements of MCL 600.2169, a family practitioner and a general practitioner are physicians engaged in the same type of medical practice. The plaintiff's expert witness was thus qualified, the affidavit of merit complied with the statute, and the action was timely filed.

3. The trial court also erred by granting summary disposition on the grounds of causation. Genuine issues of material fact existed regarding the proximate cause of the decedent's death, which issues the trier of fact must resolve. While the plaintiff's expert witness disagreed with the medical examiner regarding the decedent's cause of death, the disagreement involved interpretation and did not contradict any established fact. Nor was the expert's opinion impermissibly speculative.

Reversed and remanded.

1. NEGLIGENCE — MEDICAL MALPRACTICE — PHYSICIANS — WITNESSES — STANDARD OF CARE.

A plaintiff in a medical malpractice action against a defendant physician who is a general practitioner must show that the defendant failed to provide the plaintiff the recognized standard of acceptable professional practice or care in the community in which the defendant practices or in a similar community; an expert witness familiar with the standard of care in a community may testify concerning the standard of care in that community, even though the witness has not practiced in that community; an expert witness who is not local is not required to contact physicians in the area to determine the applicable standard of care in that community or to determine whether that community is similar to another (MCL 600.2912a[1][a]).

2. NEGLIGENCE — MEDICAL MALPRACTICE — PHYSICIANS — AFFIDAVITS OF MERIT.

An affidavit of merit in a medical malpractice action against a defendant physician who is a general practitioner must be signed

by a health professional who in the year preceding the alleged malpractice devoted a majority of his or her professional time to clinical practice or teaching as a general practitioner; for the purposes of this requirement, a family practitioner and a general practitioner are physicians engaged in the same type of medical practice (MCL 600.2169[1][c]).

*Mark Granzotto, P.C.* (by *Mark Granzotto*), and *Podolsky & Associates, P.C.* (by *Arnold M. Podolsky*), for the plaintiff.

*Fraser Trebilcock Davis & Dunlap, P.C.* (by *Graham K. Crabtree*), for the defendant.

Before: COOPER, P.J., and FORT HOOD and BORRELLO, JJ.

BORRELLO, J. Plaintiff Michael Robins, the personal representative of the estate of decedent Ilene Robins, appeals as of right the trial court's order granting summary disposition in favor of defendant. We reverse and remand.

Defendant Dr. Tilak Garg, a general practitioner, operated a walk-in clinic in Keego Harbor, Michigan. He began seeing Ilene Robins as a patient in January 1986. At that time, Dr. Garg noted that Robins was at risk for heart disease because she had the following risk factors: a family history of heart disease, high cholesterol, and a history of smoking (although Robins told Dr. Garg during her first appointment that she had just quit smoking). Dr. Garg did not refer Robins to a cardiologist in 1986, but he did order her to undergo a stress test, an electrocardiogram (EKG), and blood tests to determine, among other things, her cholesterol level. Dr. Garg diagnosed Robins with asthma in 1987. He did not order another stress test at this time. According to Dr. Garg's deposition, by 1987, Robins visited Dr. Garg's clinic as needed to get prescription refills, and she was usually in

a hurry to get her prescriptions refilled and leave. This pattern apparently continued for a number of years.

In 1998, Dr. Garg checked Robins's cholesterol level for the first time since 1986. The test revealed that Robins's cholesterol level was still high. Dr. Garg advised Robins to follow a low-cholesterol diet and to return for more testing, which was performed in July 1998. Dr. Garg asserted that in 1998, he referred Robins to a cardiologist (although this referral was not documented in Robins's medical chart) and prescribed Lipitor to control her cholesterol level. According to Dr. Garg, he planned to refill Robins's prescription for Lipitor in October 1998, but did not do so because Robins informed him that she had not taken the medication. Instead of Lipitor, Dr. Garg prescribed Zocor for Robins to control her cholesterol level. On at least two occasions in 1999, Robins returned to Dr. Garg to have prescriptions refilled, but she never asked for refills of her cholesterol medication, and her medical chart indicated that she was "[n]ot taking cholesterol medicine" and that she did "not want to take it." Dr. Garg did not order or perform any other testing for Robins's heart or cholesterol problems from that date forward, despite the fact that Robins continued to seek treatment from Dr. Garg for various ailments.

On June 1, 2001, Robins came to Dr. Garg's clinic because she was experiencing pain in her chest and back. She stated that she had experienced the same pain once the day before and once a week before. Dr. Garg testified that Robins complained of severe pain and that he and an office assistant took her to the EKG room. Dr. Garg testified that he told the receptionist to call an ambulance because Robins's pain was so severe. Before the ambulance arrived, however, Robins went into cardiac arrest as Dr. Garg was connecting the EKG

leads. She stopped breathing, and she had no pulse. Dr. Garg performed CPR until the ambulance arrived, but his efforts to revive her were unsuccessful, and Robins died at the hospital.

Plaintiff filed a medical malpractice lawsuit against Dr. Garg and attached to his complaint the affidavit of Dr. Marvin Werlinsky, a licensed family medicine practitioner in Florida. Defendant moved to strike Dr. Werlinsky as plaintiff's expert on the standard of care, arguing that Dr. Werlinsky was not a general practice physician like defendant and that he was not familiar with the standard of care in the geographical area where Dr. Garg practices medicine. The trial court agreed and struck Dr. Werlinsky as plaintiff's standard of care expert. Defendant then moved for summary disposition, arguing that because Dr. Werlinsky had signed plaintiff's affidavit of merit and was unqualified to do so, plaintiff's claim was not filed within the period of limitations and that plaintiff could not prove causation. The trial court granted defendant's motion for summary disposition on the grounds of both causation and the statute of limitations.

Plaintiff first argues that the trial court erred in striking his standard of care expert, Dr. Werlinsky, under MCL 600.2912a(1)(a). We review a trial court's decision regarding the qualification of an expert for an abuse of discretion. *Tate v Detroit Receiving Hosp*, 249 Mich App 212, 215; 642 NW2d 346 (2002). MCL 600.2912a(1)(a) provides that a plaintiff must show that

> [t]he defendant, if a general practitioner, failed to provide the plaintiff the recognized standard of acceptable professional practice or care in the community in which the defendant practices or in a similar community, and that as a proximate result of the defendant failing to provide that standard, the plaintiff suffered an injury.

"An expert familiar with the standard of care in a community may testify concerning the standard of care in that community, although he has not practiced in the community." *Bahr v Harper-Grace Hosps*, 448 Mich 135, 141; 528 NW2d 170 (1995). Additionally, the statute does not require a nonlocal expert "to contact physicians in one area to determine the applicable standard of care in that community or to determine whether that community is similar to another community." *Turbin v Graesser (On Remand)*, 214 Mich App 215, 219; 542 NW2d 607 (1995).

In this case, Dr. Werlinsky testified in his deposition that his practice was located in Palm Beach County, Florida. Defendant's clinic was located in Oakland County, Michigan. However, plaintiff submitted evidence to the trial court that Oakland County and Palm Beach County were similar in population size and had a similar number of hospitals and family practice physicians. Dr. Werlinsky testified that he interacted with general practitioners from throughout the country and believed that the way he practiced medicine was similar to the way a physician practiced medicine in Michigan. Because plaintiff presented evidence that Dr. Werlinsky was familiar with the standard of care for an area similar to where defendant practiced, *Bahr, supra* at 142, and because Dr. Werlinsky testified that he practiced medicine similarly to the way it was practiced in Michigan, Dr. Werlinsky was qualified to give testimony under MCL 600.2912a(1)(a). Thus, the trial court abused its discretion in ruling that Dr. Werlinsky was not qualified under MCL 600.2912a(1)(a).

Plaintiff also argues that the trial court erred in concluding that his affidavit of merit was improper because Dr. Werlinsky was not qualified under MCL

600.2169. Plaintiff is correct in his assertion that the trial court erred in determining that plaintiff's affidavit of merit was improper.

To file a medical malpractice action, a plaintiff must file a complaint along with an affidavit of merit. *Scarsella v Pollak*, 461 Mich 547, 549; 607 NW2d 711 (2000); MCL 600.2912d(1). The affidavit of merit must be "signed by a health professional who the plaintiff's attorney reasonably believes meets the requirements for an expert witness under section 2169." MCL 600.2912d(1). MCL 600.2169(1)(c) requires that if the defendant in a medical malpractice action is a general practitioner, the expert offering standard of care testimony against the defendant must have devoted a majority of the expert's professional time for the year preceding the date of the alleged malpractice to clinical practice or teaching as a general practitioner.

Defendant is a general practitioner, and Dr. Werlinsky is a family practitioner. The definition of a "general practitioner" is " 'a medical practitioner whose practice is not limited to any specific branch of medicine.' " *Decker v Flood*, 248 Mich App 75, 83; 638 NW2d 163 (2001), quoting *Random House Webster's College Dictionary* (1997). "Family practice" is defined as "medical specialization in general practice that requires additional training and leads to board certification." *Random House Webster's College Dictionary* (2001). We find that Dr. Werlinsky's practice fits under the definition of "general practice." Dr. Werlinsky testified that he does not limit his practice to a specific branch of medicine. Defendant's own standard of care expert, who was a family practitioner, testified in his deposition that there is a "large overlap" between family practice and general practice. Additionally, defendant himself refers to his practice as a family practice on his business card. The

practice of a family practitioner and a general practitioner are alike in that neither practice is limited to a specific branch of medicine. See *Decker, supra* at 83. For purposes of satisfying the requirements of MCL 600.2169, therefore, we hold that a family practitioner and a general practitioner are physicians engaged in the same type of medical practice. The terms "family practitioner" and "general practitioner" have become interchangeable. Accordingly, because Dr. Werlinsky was engaged in general practice medicine, as a family practitioner, for the year preceding the date of the alleged malpractice, we conclude that he was qualified under MCL 600.2169(1)(c), and that plaintiff's affidavit of merit complied with MCL 600.2912d(1).

Because plaintiff's affidavit of merit was compliant with the statute and both the affidavit and plaintiff's complaint were filed before the expiration of the period of limitations, the trial court erred in granting summary disposition in favor of defendant on the grounds that the period of limitations had expired. Additionally, because we conclude that plaintiff's affidavit of merit was proper, there is no need to address plaintiff's remaining arguments regarding the statute of limitations.

Plaintiff next argues that the trial court erred in granting summary disposition because plaintiff could not show causation. We agree with plaintiff that the trial court erred in granting summary disposition. Because there are genuine issues of material fact regarding the cause of the decedent's death, summary disposition was improper.

This Court reviews a trial court's ruling on a motion for summary disposition de novo. *Maskery v Univ of Michigan Bd of Regents*, 468 Mich 609, 613; 664 NW2d 165 (2003). A motion for summary disposition brought

under MCR 2.116(C)(10) tests the factual support for a claim. *Dressel v Ameribank*, 468 Mich 557, 561; 664 NW2d 151 (2003). In ruling on a motion for summary disposition under MCR 2.116(C)(10), the trial court may consider the pleadings, affidavits, depositions, admissions, and other admissible evidence submitted by the parties in the light most favorable to the nonmoving party. If the evidence does not establish a genuine issue of material fact, the moving party is entitled to a judgment as a matter of law. *Maiden v Rozwood*, 461 Mich 109, 120; 597 NW2d 817 (1999).

"In an action alleging medical malpractice, the plaintiff has the burden of proving that he or she suffered an injury that more probably than not was proximately caused by the negligence of the defendant or defendants." MCL 600.2912a(2). "Proximate cause" is a term of art that encompasses both cause in fact and legal cause. *Craig v Oakwood Hosp*, 471 Mich 67, 86; 684 NW2d 296 (2004). "Generally, an act or omission is a cause in fact of an injury only if the injury could not have occurred without (or 'but for') that act or omission." *Id.* at 87. Cause in fact may be established by circumstantial evidence, but the circumstantial evidence must not be speculative and must support a reasonable inference of causation. *Wiley v Henry Ford Cottage Hosp*, 257 Mich App 488, 496; 668 NW2d 402 (2003). " 'All that is necessary is that the proof amount to a reasonable likelihood of probability rather than a possibility. The evidence need not negate all other possible causes, but such evidence must exclude other reasonable hypotheses with a fair amount of certainty.' " *Skinner v Square D Co*, 445 Mich 153, 166; 516 NW2d 475 (1994), quoting 57A Am Jur 2d, Negligence, § 461, p 442. Summary disposition is not appropriate when the plaintiff offers evidence that shows "that it is more likely than not that, but for defendant's

conduct, a different result would have obtained." *Dykes v William Beaumont Hosp*, 246 Mich App 471, 479 n 7; 633 NW2d 440 (2001).

We conclude that there were genuine issues of material fact on the question of causation and that the trial court erred in granting defendant summary disposition on this ground. Although the medical examiner testified in his deposition that he believed the cause of the decedent's death was asthma with a contributing cause of a myocardial infarction, plaintiff presented expert testimony that the decedent's cause of death was a myocardial infarction. Defendant argues that plaintiff cannot establish causation because plaintiff's expert's theory of causation contradicts the findings of the medical examiner. However, the facts presented in this case are distinguishable from those considered by this Court in reaching its opinion in *Badalamenti v William Beaumont Hosp-Troy*, 237 Mich App 278; 602 NW2d 854 (1999). In *Badalamenti*, this Court opined "that an expert's opinion is objectionable where it is based on assumptions that are not in accord with the established facts." *Id.* at 286. The expert in *Badalamenti* based his opinion that the plaintiff was in cardiogenic shock only on his "skepticism" of an echocardiogram performed by another doctor. *Id.* at 287. In this case, plaintiff's expert testified that he did not disagree with the medical examiner's objective findings, but he disagreed with the medical examiner's interpretation of the findings given, in part, the decedent's clinical presentation. Although plaintiff's expert disagreed with the medical examiner regarding the decedent's cause of death, this disagreement does not contradict any established fact. Further, contrary to the findings of the trial court, plaintiff's expert's opinion was not impermissibly speculative. Thus, plaintiff's expert created a question of fact regarding whether plaintiff's heart condition caused her

death.[1] Because the determination of questions of fact are the sole responsibility of the trier of fact, the trial court erred in granting summary disposition for defendant.

We reverse the trial court's grant of summary disposition to defendant and remand for proceedings consistent with this opinion. We do not retain jurisdiction.

---

[1] This expert's testimony and that of plaintiff's standard of care expert also created questions of fact regarding whether defendant breached the standard of care and whether this breach caused the decedent harm.