*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

DIANA LYNN COOK,

        Plaintiff-Appellant,

v

SPARROW HOSPITAL and JOCELYN T BOHR
RN,

        Defendants-Appellees.

UNPUBLISHED
September 21, 2023

No. 364095
Ingham Circuit Court
LC No. 20-000278-NH

Before: HOOD, P.J., and REDFORD and MALDONADO, JJ.

PER CURIAM.

In this nursing malpractice case, plaintiff appeals by right the trial court's order granting summary disposition in favor of defendants, Sparrow Hospital and Jocelyn T. Bohr, R.N., pursuant to MCR 2.116(C)(10) (no genuine issue of material fact). Plaintiff presented evidence sufficient to establish that defendant Bohr breached the applicable standard of care; however, because plaintiff did not produce expert testimony establishing that defendant Bohr's misconduct caused plaintiff's pain and suffering, we affirm.

## I. BACKGROUND

On November 8, 2017, plaintiff underwent a minor outpatient urological procedure to alleviate small amounts of blood being found in her urine. Following the procedure, she experienced intense pain, uncontrollable vomiting, and an inability to urinate. Defendant Bohr, a nurse at Sparrow Hospital, allegedly dismissed plaintiff's concerns, refused to contact the urologist who performed the surgery, failed to accurately document plaintiff's symptoms, and prematurely discharged her from the hospital. Moreover, plaintiff and her family alleged that defendant Bohr made comments asserting that plaintiff needed to leave by 5:00 p.m. so that defendant Bohr would not have to work overtime, and plaintiff ultimately was discharged at approximately that time.

On November 11, plaintiff was at home until the early hours in agony and unable to drink water or urinate. When she returned to the hospital on November 11, she was in total renal failure. Her ureters were blocked, preventing urine from getting from her kidneys and to her bladder. Plaintiff believed that defendant Bohr's inadequate assistance following the surgery caused her

treatment to be unnecessarily delayed and that her suffering should have been alleviated much sooner. Thus, plaintiff sued defendant Bohr and Sparrow Hospital, asserting that defendant Bohr's failure to inform a doctor of her condition and the premature discharge caused her to needlessly suffer for more than two days. However, plaintiff never procured expert testimony from a urologist to establish that defendant Bohr's conduct caused plaintiff's pain and suffering. Therefore, summary disposition was granted in favor of defendants.

## II. DISCUSSION

Plaintiff argues that summary disposition was inappropriate because the nature of this case was such that a jury of laypeople could understand the facts without the assistance of expert testimony. We disagree.

This Court reviews de novo a trial court's decision to grant or deny a motion for summary disposition, and the evidence is viewed in a light most favorable to the nonmoving party. *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003). Summary disposition should be granted pursuant to MCR 2.116(C)(10) when the evidence reveals no genuine issue of material fact. *Id*. at 183. "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *Id*. Whether a witness is qualified to offer expert testimony is reviewed for abuse of discretion. *Tate ex rel Estate of Hall v Detroit Receiving Hosp*, 249 Mich App 212, 215; 642 NW2d 346 (2002).

Although this was a source of contention in the trial court, plaintiff does not dispute on appeal that her claims sound in medical malpractice. To prevail in a medical malpractice action, "the plaintiff must establish: (1) the standard of care, (2) breach of that standard of care, (3) injury, and (4) proximate causation between the alleged breach and the injury." *Pennington v Longabaugh*, 271 Mich App 101, 104; 719NW2d 616 (2006). "[T]he plaintiff has the burden of proving that he or she suffered an injury that more probably than not was proximately caused by the negligence of the defendant or defendants." MCL 600.2912(2). "Expert testimony is essential to establish a causal link between the alleged negligence and the alleged injury." *Pennington*, 271 Mich App at 104; see also *Kalah v Khan*, 295 Mich App 420, 429; 820 NW2d 233 (2012) ("Expert testimony is required to establish the standard of care and a breach of that standard as well as causation.") (citations omitted). However, expert testimony is not required if the matter "was within the common understanding of the jury." *Woodward v Custer*, 473 Mich 1, 9; 702 NW2d 522 (2005).

In this case, plaintiff's theory is that defendant Bohr breached the standard of care by: failing to notify a doctor that plaintiff was in pain, vomiting, and unable to urinate; prematurely discharging plaintiff from the hospital; and falsifying medical records to suggest that plaintiff was not experiencing these symptoms. Plaintiff posits that, had defendant Bohr notified a doctor of plaintiff's symptoms, properly documented her symptoms, and allowed her to stay at the hospital, plaintiff would have received the treatment on November 8 that was delayed until November 11. Thus, had she not been prematurely discharged from the hospital, she would have been spared the multiple days of pain and suffering she endured. However, under established Michigan case law, proof of this theory requires evidence regarding what would have happened if a reasonable

urologist had been notified on November 8 that plaintiff was experiencing these symptoms. See *Pennington*, 271 Mich App at 104.

The central premise of plaintiff's claim is that had a reasonable urologist been informed on November 8 that plaintiff was in pain, vomiting, and unable to urinate, the urologist would have immediately provided the care plaintiff ultimately received on November 11. Yet, how a urologist would have responded to a complication following a urological procedure is not something that would fall "within the common understanding of" laypeople sitting on a jury. *Woodward*, 473 Mich at 9. The fact plaintiff underwent the surgery when she returned to the hospital on November 11 does not enable a layperson to simply infer that she would have undergone the surgery on November 8 because only an expert can discuss whether the passage of time impacted the course of treatment. In other words, it is possible that plaintiff's condition was different on November 11 than it was on November 8, and an expert is needed to establish that but for the actions of defendant, plaintiff would have received that treatment on November 8. It is possible that plaintiff's surgeon, Dr. Rizer, would have discharged plaintiff with instructions to return in a couple days if her condition did not improve; indeed, the evidence established that Dr. Rizer was contacted on November 9 regarding plaintiff's symptoms and simply prescribed an anti-nausea medication.

To support the theory that defendant Bohr's actions caused plaintiff's treatment to be unnecessarily delayed, plaintiff offered affidavits from a nurse, Rebecca A. Schnepp, and a general practitioner, Dr. Peter Luea. Nurse Schnepp stated that defendant Bohr breached the applicable standard of care by disobeying doctors' orders, falsely recording plaintiff's condition, and discharging plaintiff while she was in pain and vomiting. Both Nurse Schnepp and Dr. Luea opined that plaintiff was discharged prematurely, causing an unnecessary delay in her treatment. However, the trial court appropriately exercised its discretion to conclude that Nurse Schnepp and Dr. Luea were not qualified to speak to the course of action that a reasonable urologist would have taken on November 8. See *Tate*, 249 Mich App at 215. The trial court did not abuse its discretion by determining that establishing the causation element of plaintiff's claim required the specialized knowledge of a urologist.

All expert testimony in a medical malpractice action is subject to MCL 600.2169(2),[1] which provides:

> In determining the qualifications of an expert witness in an action alleging medical malpractice, the court shall, at a minimum, evaluate all of the following:
>
> (a) The educational and professional training of the expert witness.
>
> (b) The area of specialization of the expert witness.

---

[1] An important wrinkle in this case is that while expert testimony regarding urology is needed, the urologist is not a party to this lawsuit; therefore, the statutory requirement that the expert have "the same specialty as the party against whom or on whose behalf the testimony is offered" does not apply. MCL 600.2169(1)(a).

(c) The length of time the expert witness has been engaged in the active clinical practice or instruction of the health profession or the specialty.

(d) The relevancy of the expert witness's testimony.

Peter Luea is "board certified in family medicine" and "devoted a majority of [his] professional time to the active clinical practice of family medicine." Rebecca Schnepp was "a registered nurse" who "devoted a majority of [her] professional time to the active clinical practice of nursing." Nothing in their affidavits or otherwise in the record suggests that either of these witnesses have any experience or training related to urology. Therefore, because the trial court is afforded broad discretion to determine whether a person is qualified to testify as an expert, the trial court did not err by concluding that they were not qualified to testify as experts regarding what a reasonable urologist would have done had the urologist been given the information withheld by defendant Bohr. See *Estate of Horn v Swofford*, 334 Mich App 281, 287-288; 964 NW2d 904 (2020). Moreover, plaintiff was explicitly told, after defendants initially sought summary disposition, that a sworn statement from a urologist would be necessary in order to survive summary disposition. Nevertheless, during the months between the denial of defendants' initial motion for summary disposition and the filing of the renewed motion, plaintiff did not obtain a statement from a urologist. This further supports summary disposition.

Plaintiff argues that expert testimony was not necessary because the falsified medical records speak for themselves. Various medical records were attached to plaintiff's response to defendant's motion for summary disposition, and these suggest that defendant Bohr did falsify medical records. For example, at 5:13 p.m. on November 8, defendant Bohr entered a note stating that plaintiff "voided [a] small amount of urine." Plaintiff, however, insisted at her deposition that she did not urinate at all prior to being discharged. At 5:00 p.m., defendant Bohr entered a note indicating that plaintiff had taken an orally administered dose of phenazopyridine.[2] Plaintiff testified, however, that she was not given any pain medication. Plaintiff's discharge checklist contained notes from defendant Bohr indicating that plaintiff was not experiencing nausea, had "voided," and could tolerate oral fluids. At 3:01 p.m. and again at 4:55 p.m., defendant Bohr made entries indicating that plaintiff denied being in pain. However, defendant Bohr admitted during her deposition that plaintiff did tell her that she was in pain and that it was never documented. Finally, notes prepared by Dr. Mark Shank, D.O. on November 11, 2017, the day plaintiff returned to the hospital, indicated that plaintiff reported having been in constant pain since her procedure, having been unable to tolerate food or fluids, and having only been able to pass small amounts of blood when attempting to urinate. However, this is not enough to establish medical malpractice without evidence connecting the misconduct to the damages. Thus, expert testimony was required to establish that plaintiff would not have suffered but for defendant Bohr's falsification of medical records.

It appears from the record that defendant Bohr was dismissive of plaintiff's state of being, and the record supports plaintiff's contention that she was discharged prematurely. Moreover, it appears that while the reasons and state of mind are unclear, defendant Bohr entered false information into plaintiff's medical records. However, because the trial court did not abuse its

---

[2] Phenazopyridine is used to relieve urinary tract discomfort.

discretion by requiring the plaintiff to procure favorable testimony from a urologist to establish a causal connection between defendant Bohr's misconduct and plaintiff's suffering, we must affirm.

Affirmed.

/s/ Noah P. Hood
/s/ James Robert Redford
/s/ Allie Greenleaf Maldonado