ROBINS v GARG (ON REMAND)

Docket No. 256169. Submitted June 18, 2007, at Lansing. Decided July
26, 2007, at 9:10 a.m.

Michael Robins, as personal representative of the estate of Ilene
Robins, deceased, brought a medical malpractice action in the
Oakland Circuit Court against Tilak Garg, M.D. The defendant
moved to strike the plaintiff's expert witness on the standard of
care. The court, John J. McDonald, J., granted the motion,
concluding that the expert witness was a family practitioner,
rather than a general practitioner like the defendant, and, as a
Florida physician, was not familiar with the standard of care in the
geographical area where the defendant practiced. The court then
granted the defendant's summary disposition motion on the
grounds (1) that the expert witness was unqualified to sign the
plaintiff's affidavit of merit and the action was thus not filed
within the period of limitations and (2) that the plaintiff could not
prove causation. The plaintiff appealed. The Court of Appeals,
COOPER, P.J., and FORT HOOD and BORRELLO, JJ., reversed and
remanded the matter to the trial court for proceedings consistent
with its opinion. 270 Mich App 519 (2006). The Supreme Court, in
lieu of granting leave to appeal, vacated the opinion of the Court of
Appeals and remanded the matter to the Court of Appeals for
reconsideration in light of *Woodard v Custer*, 476 Mich 545 (2006).
478 Mich 862 (2007).

On remand, the Court of Appeals *held*:

1. The trial court abused its discretion by ruling that the
expert witness was not qualified under MCL 600.2912a(1)(a). That
statute requires a plaintiff to show that a defendant who is a
general practitioner failed to provide the plaintiff the recognized
standard of acceptable professional practice or care in a commu-
nity in which the defendant practices or in a similar community.
An expert witness familiar with the standard of care in a commu-
nity may testify concerning the standard of care in that commu-
nity even though the witness has not practiced in the community.
An expert witness who is not local is not required to contact
physicians in the area to determine the applicable standard of care
or whether the community is similar to another. The plaintiff

presented evidence that his witness was familiar with the standard of care for an area similar to that where the defendant practiced and practiced medicine similarly to how it is practiced in Michigan, which qualified the witness to testify under MCL 600.2912a(1)(a).

2. The trial court erred by concluding that the affidavit of merit failed to comply with MCL 600.2169 because the plaintiff's expert witness was not qualified to give expert testimony against the defendant. The defendant is a general practitioner, not a specialist. Therefore, MCL 600.2169(1)(c) applies to this case and requires that the expert offering standard-of-care testimony against the defendant must have devoted a majority of his or her professional time in the year preceding the date of the alleged malpractice to active clinical practice as a general practitioner or the instruction of students as a general practitioner.

3. The defendant's expert's practice as a family practitioner fits under the definition of "general practice" because it is not limited to a specific branch of medicine. The practices of a family practitioner and a general practitioner are alike in that neither practice is limited to a specific branch of medicine.

4. For purposes of satisfying the requirements of MCL 600.2169, an expert who is a board-certified family practitioner is qualified under § 2169(1)(c) to testify against a defendant doctor who is a general practitioner, as long as the requirements of MCL 600.2169(1)(c)(*i*) or (*ii*) are also satisfied. The trial court erred in granting summary disposition on the ground that the period of limitations had expired.

5. There were genuine issues of material fact regarding the cause of the decedent's death. Therefore, the trial court erred in granting summary disposition on the ground that the plaintiff could not show causation. The plaintiff's expert's opinion was not impermissibly speculative and created a question of fact regarding the cause of death.

Reversed and remanded.

1. NEGLIGENCE — MEDICAL MALPRACTICE — PHYSICIANS — WITNESSES — STANDARD OF CARE.

A plaintiff in a medical malpractice action against a defendant physician who is a general practitioner must show that the defendant failed to provide the plaintiff the recognized standard of acceptable professional practice or care in the community in which the defendant practices or in a similar community; an expert witness familiar with the standard of care in a community may testify concerning the standard of care in that community, even though the witness has not practiced in that community; an expert

witness who is not local is not required to contact physicians in the area to determine the applicable standard of care in that community or to determine whether that community is similar to another (MCL 600.2912a[1][a]).

2. NEGLIGENCE — MEDICAL MALPRACTICE — PHYSICIANS — AFFIDAVITS OF MERIT.

An affidavit of merit in a medical malpractice action against a defendant physician who is a general practitioner must be signed by a health professional who in the year preceding the alleged malpractice devoted a majority of his or her professional time to clinical practice or teaching as a general practitioner; for the purposes of satisfying this requirement, an expert who is a board-certified family practitioner is qualified to sign the affidavit as long as the expert has in the year preceding the alleged malpractice devoted a majority of his or her professional time to clinical practice or teaching as a general practitioner (MCL 600.2912d, 600.2169[1][c][*i*] and [*ii*]).

*Podolsky and Associates, P.C.* (by *Arnold M. Podolsky*), and *Mark Granzotto, P.C.* (by *Mark Granzotto*), for the plaintiff.

*Fraser Trebilcock Davis & Dunlap, P.C.* (by *Graham K. Crabtree*), for the defendant.

ON REMAND

Before: COOPER, P.J., and FORT HOOD and BORRELLO, JJ.

BORRELLO, J. Plaintiff Michael Robins, the personal representative of the estate of decedent Ilene Robins, appeals as of right the trial court's order granting summary disposition in favor of defendant. Previously, in a published opinion, we reversed the trial court's grant of summary disposition in favor of defendant and remanded. *Robins v Garg*, 270 Mich App 519; 716 NW2d 318 (2006). In lieu of granting leave to appeal, our Supreme Court vacated our opinion and remanded the case to use for reconsideration in light of *Woodard v*

*Custer*, 476 Mich App 545; 719 NW2d 842 (2006). *Robins v Garg*, 478 Mich 862 (2007). On remand, we again reverse and remand.

Defendant Tilak Garg, M.D., a general practitioner, operated a walk-in clinic in Keego Harbor, Michigan. He began seeing Ilene Robins as a patient in January 1986. At that time, Dr. Garg noted that Robins was at risk for heart disease because she had the following risk factors: a family history of heart disease, high cholesterol, and a history of smoking (although Robins told Dr. Garg during her first appointment that she had just quit smoking). Dr. Garg did not refer Robins to a cardiologist in 1986, but he did order her to undergo a stress test, an electrocardiogram (EKG), and blood tests to determine, among other things, her cholesterol level. Dr. Garg diagnosed Robins with asthma in 1987. He did not order another stress test at this time. According to Dr. Garg's deposition, by 1987, Robins visited Dr. Garg's clinic as needed to get prescription refills, and she was usually in a hurry to get her prescriptions refilled and leave. This pattern apparently continued for a number of years.

In 1998, Dr. Garg checked Robins's cholesterol level for the first time since 1986. The test revealed that Robins's cholesterol level was still high. Dr. Garg advised Robins to follow a low-cholesterol diet and to return for more testing, which was performed in July 1998. Dr. Garg asserted that in 1998 he referred Robins to a cardiologist (although this referral was not documented in Robins's medical chart) and prescribed Lipitor to control her cholesterol level. According to Dr. Garg, he planned to refill Robins's prescription for Lipitor in October 1998, but did not do so because Robins informed him that she had not taken the medication. Instead of Lipitor, Dr. Garg prescribed Zocor for Robins to control her cholesterol level. On at least two

occasions in 1999, Robins returned to Dr. Garg to have prescriptions refilled, but she never asked for refills of her cholesterol medication, and her medical chart indicated that she was "[n]ot taking cholesterol medicine" and that she did "not want to take it." Dr. Garg did not order or perform any other testing for Robins's heart or cholesterol problems from that date forward, despite the fact that Robins continued to seek treatment from Dr. Garg for various ailments.

On June 1, 2001, Robins came to Dr. Garg's clinic because she was experiencing pain in her chest and back. She stated that she had experienced the same pain once the day before and once a week before. Dr. Garg testified that Robins complained of severe pain and that he and an office assistant took her to the EKG room. Dr. Garg testified that he told the receptionist to call an ambulance because Robins's pain was so severe. Before the ambulance arrived, however, Robins went into cardiac arrest as Dr. Garg was connecting the EKG leads. She stopped breathing, and she had no pulse. Dr. Garg performed cardiopulmonary resuscitation until the ambulance arrived, but his efforts to revive her were unsuccessful, and Robins died at the hospital.

Plaintiff filed a medical malpractice lawsuit against Dr. Garg and attached to his complaint the affidavit of Marvin Werlinsky, D.O., a licensed family practitioner in Florida. Dr. Werlinsky is board-certified in family practice by the American College of Osteopathic Family Physicians. Defendant moved to strike Dr. Werlinsky as plaintiff's expert on the standard of care, arguing that Dr. Werlinsky was not a general practice physician like defendant and that Dr. Werlinsky was not familiar with the standard of care in the geographical area where Dr. Garg practices medicine. The trial court agreed and struck Dr. Werlinsky as plaintiff's expert on the stan-

dard of care. Defendant then moved for summary disposition, arguing that because Dr. Werlinsky had signed plaintiff's affidavit of merit and was unqualified to do so, plaintiff's claim was not filed within the period of limitations and that plaintiff could not prove causation. The trial court granted defendant's motion for summary disposition on the grounds of both causation and the statute of limitations.

Plaintiff first argues that the trial court erred in striking his standard-of-care expert, Dr. Werlinsky, under MCL 600.2912a(1)(a). We review a trial court's decision regarding the qualification of an expert for an abuse of discretion. *Tate v Detroit Receiving Hosp*, 249 Mich App 212, 215; 642 NW2d 346 (2002). MCL 600.2912a(1)(a) provides that a plaintiff must show that

> [t]he defendant, if a general practitioner, failed to provide the plaintiff the recognized standard of acceptable professional practice or care in the community in which the defendant practices or in a similar community, and that as a proximate result of the defendant failing to provide that standard, the plaintiff suffered an injury.

"An expert familiar with the standard of care in a community may testify concerning the standard of care in that community, although he has not practiced in the community." *Bahr v Harper-Grace Hosps*, 448 Mich 135, 141; 528 NW2d 170 (1995). Additionally, the statute does not require a nonlocal expert "to contact physicians in one area to determine the applicable standard of care in that community or to determine whether that community is similar to another community." *Turbin v Graesser (On Remand)*, 214 Mich App 215, 219; 542 NW2d 607 (1995).

In this case, Dr. Werlinsky testified in his deposition that his practice was located in Palm Beach County, Florida. Defendant's clinic was located in Oakland

County, Michigan. However, plaintiff submitted evidence to the trial court that Oakland County and Palm Beach County were similar in population size and had a similar number of hospitals and family practice physicians. Dr. Werlinsky testified that he interacted with general practitioners from throughout the country and believed that the way he practiced medicine was similar to the way a physician practiced medicine in Michigan. Because plaintiff presented evidence that Dr. Werlinsky was familiar with the standard of care for an area similar to where defendant practiced, *Bahr, supra* at 142, and because Dr. Werlinsky testified that he practiced medicine similarly to the way it was practiced in Michigan, Dr. Werlinsky was qualified to give testimony under MCL 600.2912a(1)(a). Thus, the trial court abused its discretion by ruling that Dr. Werlinsky was not qualified under MCL 600.2912a(1)(a).

Plaintiff next argues that the trial court erred by concluding that his affidavit of merit failed to comply with MCL 600.2169 because Dr. Werlinsky was not qualified to give expert testimony against Dr. Garg.[1] We agree.

In a medical malpractice action, the plaintiff's expert's qualifications must match the qualifications of the defendant. MCL 600.2169(1); *Decker v Flood*, 248 Mich App 75, 85; 638 NW2d 163 (2001). MCL 600.2169 provides, in relevant part:

> (1) In an action alleging medical malpractice, a person shall not give expert testimony on the appropriate standard of practice or care unless the person is licensed as a health

---

[1] This is the only issue that is affected by the Supreme Court's remand order in this case. Apart from this issue, the opinion is, with the exception of minor changes, unchanged from our first opinion in this case.

professional in this state or another state and meets the following criteria:

(a) If the party against whom or on whose behalf the testimony is offered is a specialist, specializes at the time of the occurrence that is the basis for the action in the same specialty as the party against whom or on whose behalf the testimony is offered. However, if the party against whom or on whose behalf the testimony is offered is a specialist who is board certified, the expert witness must be a specialist who is board certified in that specialty.

(b) Subject to subdivision (c), during the year immediately preceding the date of the occurrence that is the basis for the claim or action, devoted a majority of his or her professional time to either or both of the following:

(*i*) The active clinical practice of the same health profession in which the party against whom or on whose behalf the testimony is offered is licensed and, if that party is a specialist, the active clinical practice of that specialty.

(*ii*) The instruction of students in an accredited health professional school or accredited residency or clinical research program in the same health profession in which the party against whom or on whose behalf the testimony is offered is licensed and, if that party is a specialist, an accredited health professional school or accredited residency or clinical research program in the same specialty.

(c) If the party against whom or on whose behalf the testimony is offered is a general practitioner, the expert witness, during the year immediately preceding the date of the occurrence that is the basis for the claim or action, devoted a majority of his or her professional time to either or both of the following:

(*i*) Active clinical practice as a general practitioner.

(*ii*) Instruction of students in an accredited health professional school or accredited residency or clinical research program in the same health profession in which the party against whom or on whose behalf the testimony is offered is licensed.

In *Woodard, supra,* our Supreme Court broadly interpreted the term specialist in MCL 600.2169. According to *Woodard*'s definition of a "specialist", any physician who can potentially become board-certified in a branch of medicine or surgery is a specialist, and a physician does not have to be board-certified to be a specialist. *Woodard, supra* at 561. Despite the broad definition of "specialist" in *Woodard,* defendant Dr. Garg does not qualify as a specialist. It is undisputed that Dr. Garg is a general practitioner. The American Board of Medical Specialties does not offer board certification for general practitioners. Dr. Garg is therefore not board-certified in general practice and could never potentially become board-certified in general practice. Because general practice is not an area of medicine in which a medical doctor can potentially become board-certified, a medical doctor practicing general medicine is not a specialist under *Woodard*.[2] *Id.* Therefore, MCL 600.2169(1)(c) applies to this case. MCL 600.2169(1)(c) requires that if the defendant in a medical malpractice action is a general practitioner, the expert offering standard-of-care testimony against the defendant must have devoted a majority of the expert's professional time in the year preceding the date of the alleged malpractice to active clinical practice as a general practitioner or the instruction of students as a general practitioner.

Defendant is an M.D. who is a general practitioner, and Dr. Werlinsky is a D.O. who is a board-certified family practitioner. The definition of a "general practi-

---

[2] We observe, however, that the American Board of Medical Specialties does offer board certification in family practice. Therefore, unlike a medical doctor engaged in general practice, a medical doctor could become a specialist in family practice. Although defendant's business card refers to his practice as a family practice, he stated in his deposition that he would characterize his practice as general practice and that he did not "do family medicine."

tioner" is " 'a medical practitioner whose practice is not limited to any specific branch of medicine.' " *Decker*, *supra* at 83, quoting *Random House Webster's College Dictionary* (1997). "Family practice" is defined as "medical specialization in general practice that requires additional training and leads to board certification." *Random House Webster's College Dictionary* (2001). We find that Dr. Werlinsky's practice fits under the definition of "general practice." Dr. Werlinsky testified that he does not limit his practice to a specific branch of medicine. Defendant's own standard-of-care expert, who was a family practitioner, testified in his deposition that there is a "large overlap" between family practice and general practice. Additionally, while in his deposition defendant denied engaging in family practice, he refers to his practice as a family practice on his business card. The practices of a family practitioner and a general practitioner are alike in that neither practice is limited to a specific branch of medicine. See *Decker*, *supra* at 83. For purposes of satisfying the requirements of MCL 600.2169, therefore, we hold that an expert who is a board-certified family practitioner is qualified under MCL 600.2169(1)(c) to testify against a defendant doctor who is a general practitioner, as long as MCL 600.2169(1)(c)(*i*) or (*ii*) is also satisfied.[3] Accordingly, because Dr. Werlinsky was engaged in general practice medicine, as a family practitioner, for the year preced-

---

[3] However, we observe that the analysis changes if the expert witness is a general practitioner and the defendant is a doctor who is board-certified in family medicine. The reason for this is that under *Woodard*, the defendant would be a specialist in family medicine. Therefore, MCL 600.2169(1)(a), not MCL 600.2169(1)(c), would apply. Under MCL 600.2169(1)(a), the defendant, as a board-certified family practitioner, would be a specialist in family practice under *Woodard*; therefore, the expert must also be board-certified in family medicine. A medical doctor who is a general practitioner therefore would not be qualified to testify against a board-certified family practitioner under MCL 600.2169(1)(a).

ing the date of the alleged malpractice, we conclude that he was qualified under MCL 600.2169(1)(c), and that plaintiff's affidavit of merit complied with MCL 600.2912d(1).

Because plaintiff's affidavit of merit was compliant with the statute and both the affidavit and plaintiff's complaint were filed before the expiration of the period of limitations, the trial court erred in granting summary disposition in favor of defendant on the ground that the period of limitations had expired. Additionally, because we conclude that plaintiff's affidavit of merit was proper, there is no need to address plaintiff's remaining arguments regarding the statute of limitations.

Plaintiff next argues that the trial court erred in granting summary disposition on the basis that plaintiff could not show causation. We agree with plaintiff that the trial court erred in granting summary disposition on that ground. Because there are genuine issues of material fact regarding the cause of the decedent's death, summary disposition was improper.

This Court reviews de novo a trial court's ruling on a motion for summary disposition. *Maskery v Univ of Michigan Bd of Regents*, 468 Mich 609, 613; 664 NW2d 165 (2003). A motion for summary disposition brought under MCR 2.116(C)(10) tests the factual support for a claim. *Dressel v Ameribank*, 468 Mich 557, 561; 664 NW2d 151 (2003). In ruling on a motion for summary disposition under MCR 2.116(C)(10), the trial court may consider the pleadings, affidavits, depositions, admissions, and other admissible evidence submitted by the parties in the light most favorable to the nonmoving party. If the evidence does not establish a genuine issue of material fact, the moving party is entitled to judg-

ment as a matter of law. *Maiden v Rozwood*, 461 Mich 109, 120; 597 NW2d 817 (1999).

"In an action alleging medical malpractice, the plaintiff has the burden of proving that he or she suffered an injury that more probably than not was proximately caused by the negligence of the defendant or defendants." MCL 600.2912a(2). "Proximate cause" is a term of art that encompasses both cause in fact and legal cause. *Craig v Oakwood Hosp*, 471 Mich 67, 86; 684 NW2d 296 (2004). "Generally, an act or omission is a cause in fact of an injury only if the injury could not have occurred without (or 'but for') that act or omission." *Id.* at 87. Cause in fact may be established by circumstantial evidence, but the circumstantial evidence must not be speculative and must support a reasonable inference of causation. *Wiley v Henry Ford Cottage Hosp*, 257 Mich App 488, 496; 668 NW2d 402 (2003). " 'All that is necessary is that the proof amount to a reasonable likelihood of probability rather than a possibility. The evidence need not negate all other possible causes, but such evidence must exclude other reasonable hypotheses with a fair amount of certainty.' " *Skinner v Square D Co*, 445 Mich 153, 166; 516 NW2d 475 (1994), quoting 57A Am Jur 2d, Negligence, § 461, p 442. Summary disposition is not appropriate when the plaintiff offers evidence that shows "that it is more likely than not that, but for defendant's conduct, a different result would have obtained." *Dykes v William Beaumont Hosp*, 246 Mich App 471, 479 n 7; 633 NW2d 440 (2001).

We conclude that there were genuine issues of material fact on the question of causation and that the trial court erred in granting defendant summary disposition on this ground. Although the medical examiner testified in his deposition that he believed the cause of the

decedent's death was asthma with a contributing cause of a myocardial infarction, plaintiff presented expert testimony that the decedent's cause of death was a myocardial infarction. Defendant argues that plaintiff cannot establish causation because plaintiff's expert's theory of causation contradicts the findings of the medical examiner. However, the facts presented in this case are distinguishable from those considered by this Court in reaching its opinion in *Badalamenti v William Beaumont Hospital-Troy*, 237 Mich App 278; 602 NW2d 854 (1999). In *Badalamenti*, this Court opined "that an expert's opinion is objectionable where it is based on assumptions that are not in accord with the established facts." *Id.* at 286. The expert in *Badalamenti* based his opinion that the plaintiff was in cardiogenic shock only on his "skepticism" about an EKG performed by another doctor. *Id.* at 287. In this case, plaintiff's expert testified that he did not disagree with the medical examiner's objective findings but disagreed with the medical examiner's interpretation of the findings given, in part, the decedent's clinical presentation. Although plaintiff's expert disagreed with the medical examiner regarding the decedent's cause of death, this disagreement does not contradict any established fact. Further, contrary to the findings of the trial court, plaintiff's expert's opinion was not impermissibly speculative. Thus, plaintiff's expert created a question of fact regarding whether plaintiff's heart condition caused her death.[4] Because the determination of questions of fact is the sole responsibility of the trier of fact, the trial court erred in granting summary disposition for defendant.

---

[4] This expert's testimony and that of plaintiff's standard-of-care expert also created questions of fact regarding whether defendant breached the standard of care and whether this breach caused the decedent harm.

We reverse the trial court's grant of summary disposition to defendant and remand for proceedings consistent with this opinion. We do not retain jurisdiction.