# STATE OF MICHIGAN

# COURT OF APPEALS

---

NANCY BINDSCHATEL,

        Plaintiff-Appellant,

v

MUNSON MEDICAL CENTER,

        Defendant,

and

TRAVERSE ANESTHESIA ASSOCIATES., P.C.,

        Defendant-Appellee.

UNPUBLISHED
March 8, 2016

No. 323769
Grand Traverse Circuit Court
LC No. 13-029965-NH

---

Before: SERVITTO, P.J., and GADOLA and O'BRIEN, JJ.

PER CURIAM.

Plantiff Nancy Bindschatel appeals as of right the trial court's August 28, 2014 order granting summary disposition to defendant Traverse Anesthesia Associates, P.C. pursuant to MCR 2.116(C)(10). We affirm. Bindschatel's claim against defendant Munson Medical Center was dismissed by stipulation and is not at issue in this appeal.

Bindschatel suffered a tracheal laceration of approximately seven centimeters while undergoing surgery to remove a cancerous portion of her lung. The laceration caused temporary voice loss and required additional surgery and follow-up treatment. Bindschatel subsequently filed this lawsuit against both defendants, alleging that the anesthesiologist, Dr. Mark R. Aulicino, caused the laceration through faulty placement of an endotracheal tube. At his deposition, Aucilino testified that the intubation procedure at issue "was very straight forward." Asked if he had an opinion, within a reasonable degree of medical certainty, as to what caused the tear in Bindschatel's trachea, Aucilino offered "a few potential causes," but he prefaced them by stating that, "[a]s to the exact cause, I don't think I could say specifically." He opined that the most probable cause was "[c]uff pressure" from "having the endotracheal tube in the trachea with the cuff inflated," but he also acknowledged that barotrauma or surgical exposure might have also caused or contributed to the injury. Aucilino further acknowledged that insertion of the tube itself was a possible cause, but he stated that it was "far down on [his] list, based on how the intubation proceeded."

-1-

Bindschatel's expert, Dr. David Austin, agreed in his deposition that cuff pressure was a possible cause of Bindschatel's injury but said that he knew of no example where "the cuff would be strong enough to cause a linear laceration." He opined that barotrauma was also a remote possibility. When asked if he ruled out the possibility that surgical exposure, meaning "the kind of surgical tugging, pulling, repositioning, retractions, et cetera" involved in the underlying surgery, contributed to the injury, Austin replied, "Not the initial injury," but he agreed that exposure may have caused an enlargement of the laceration. Most pertinent to this appeal, Austin agreed that the procedures, as documented by Aucilino, utilized in this matter satisfied the applicable standard of care. He denied, however, believing those accounts: "I find it very hard to rationalize how a lesion such as this could occur with what he describes as his technique for intubating this patient." Austin continued, "I think he pointed the tip of the tube to the right and caused the 7-centimeter lesion along the right side of the trachea," and elaborated, "He turned the tube to the right, essentially clockwise 45 degrees, pointing the tip to the right side of the trachea, causing the laceration." When asked to explain the basis for that opinion, Austin answered as follows: "The lesion itself being on the right side of the trachea, and that I cannot rationalize how a tube which is turned to the left, which the tip is pointed to the left, could have caused that sort of laceration," and added that this was likely a "tip injury" given "the length of the lesion and its proximity of cause of tracheal instrumentation, using a double-lumen tube." When asked for further clarification, Austin answered the following:

> Well, meaning cause and effect. Meaning there was a tube placed in the trachea, and she sustained a 7-centimeter laceration to the right side of her trachea. There was nothing else there except the tracheal tube. And the tip is the most likely cause of such a lesion, because I can't think of any other part of the endotracheal tube that could cause that sort of lesion.

Austin expressly admitted that this opinion was based solely on speculation: "Yes, I am speculating. Yes."

Traverse Anesthesia eventually moved for summary disposition pursuant to MCR 2.116(C)(10), arguing that Dr. Austin's testimony regarding malpractice as a potential cause of Bindschatel's injury was too speculative to create a genuine issue of material fact. The trial court agreed. While the trial court acknowledged that Aucilino's account was not established fact in the sense that it could not be challenged by Bindschatel's expert, it nevertheless granted summary disposition because Austin's opinion that medical negligence was more likely than not the cause of the injury was supported only by speculation. This appeal followed.

On appeal, Bindschatel argues that the trial court erred in granting summary disposition pursuant to MCR 2.116(C)(10) because Austin's testimony created a genuine issue of material fact as to causation. We disagree.

This Court reviews a trial court's decision on a motion for summary disposition de novo as a question of law. *Ardt v Titan Ins Co*, 233 Mich App 685, 688; 593 NW2d 215 (1999). Summary disposition pursuant to MCR 2.116(C)(10) is appropriate "if the affidavits or other documentary evidence show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Decker v Flood*, 248 Mich App 75, 81; 638 NW2d 163 (2001). "In reviewing a motion under MCR 2.116(C)(10), this Court considers the

pleadings, admissions, affidavits, and other relevant documentary evidence of record in the light most favorable to the nonmoving party to determine whether any genuine issue of material fact exists to warrant a trial." *Walsh v Taylor*, 263 Mich App 618, 621; 689 NW2d 506 (2004).

" 'In an action alleging medical malpractice, the plaintiff has the burden of proving that he or she suffered an injury that more probably than not was proximately caused by the negligence of the defendant or defendants.' " *Robins v Garg (On Remand)*, 276 Mich App 351, 362; 741 NW2d 49 (2007), quoting MCL 600.2912a(2). To establish proximate cause, the plaintiff must prove both cause in fact and legal causation. *Weymers v Khera*, 454 Mich 639, 647; 563 NW2d 647 (1997), citing *Skinner v Square D Co*, 445 Mich 153, 162-163; 516 NW2d 475 (1994). Cause in fact, which is at issue here, requires substantial evidence from which a jury could conclude that, more likely than not, but for the defendant's conduct, the plaintiff's injuries would not have occurred. *Id*. at 647-648. That is, the plaintiff must introduce evidence that affords a reasonable basis to support the conclusion that, more likely than not, the conduct of the defendant was a cause in fact of the result. *Id*. It requires more than a mere possibility. *Id*. Indeed, speculation, conjecture, and probabilities, alone, are simply insufficient to withstand summary disposition. *Id*. In reviewing the record, we discern only speculation, conjecture, probabilities, and mere possibility offered by Austin on behalf of Bindschatel. Therefore, summary disposition was appropriate.

On appeal, Bindschatel relies on *Robins* in arguing that because Aucilino and Austin disagree as to how her injury came about, a factual issue exists. But *Robins* is distinguishable from the instant case. In *Robins*, a medical examiner opined that the cause of death was asthma with a contributing cause of myocardial infarction, and the plaintiff's expert, using the same records and agreeing with the "objective findings" of the medical examiner, opined that the cause of death was solely myocardial infarction. 276 Mich App at 363. This Court held that the expert's opinion did not contradict an established fact but instead offered a legitimate, non-speculative, alternative interpretation of the medical examiner's objective findings. *Id*. In this case, however, the fundamental disagreement was over whether Aucilino turned a tube improperly, causing it to come into contact with, and thus tear, the right side of Bindschatel's trachea. Austin speculated that this must have happened, but that opinion was not based on any evidence beyond the existence of the injury itself. This is not a case where two doctors examined the same records after an injury occurred and formed differing opinions from them. Rather, it is one where one doctor was present and provided an account of what happened, and another doctor speculated, after the fact, that something else probably happened based solely on the presence of the injury. Thus, Bindschatel's reliance on *Robins* is misplaced. Bindschatel also relies, at least in part, on this Court's opinion in *Elher v Misra*, 308 Mich App 276; 370 NW2d 335 (2014), but that decision was recently reversed by our Supreme Court. *Elher v Misra*, ___ Mich ___; ___ NW2d ___ (2016) (Docket No. 150824). Additionally, the issue presented in that case, "whether the circuit court abused its discretion by excluding plaintiff's expert medical testimony under MRE 702," is quite different from the issue presented in this case. *Id*. at ___; slip op at 2.

Both before the trial court and before this Court, Traverse Anesthesia relies on *Badalamenti v William Beaumont Hosp-Troy*, 237 Mich App 278; 602 NW2d 854 (1999), in support of its position. In *Badalamenti*, the plaintiff argued that a cardiologist negligently failed to diagnose and properly treat the plaintiff's cardiogenic shock, which resulted in gangrene and

multiple amputations. *Id*. at 281-282. To support that position, the plaintiff presented an expert whose opinion was based on his "skepticism" of, and unwillingness to accept, the results of an echocardiogram performed by a physician who was not himself accused of malpractice. The expert conceded that if that initial test was, in fact, accurate in showing nearly normal heart function, his opinion would be incorrect. *Id*. at 287-288. This Court reiterated that establishing cause in fact "generally requires showing that but for the defendant's actions, the plaintiff's injury would not have occurred" and that, "[t]o be adequate, a plaintiff's circumstantial proof must facilitate reasonable inferences of causation, not mere speculation." *Id*. at 285 (citation and internal quotation marks omitted; alterations by *Badalamenti* Court). We explained as follows:

> "The plaintiff must introduce evidence which affords a reasonable basis for the conclusion that it is more likely than not that the conduct of the defendant was a cause in fact of the result. A mere possibility of such causation is not enough; and when the matter remains one of pure speculation or conjecture, or the probabilities are at best evenly balanced, it becomes the duty of the court to direct a verdict for the defendant." [*Id*. at 285-286 (citations and internal quotation marks omitted).]

"[A]n expert's opinion is objectionable where it is based on assumptions not in accord with the established facts." *Id*.at 286. "This is true where an expert witness' testimony is inconsistent with the testimony of a witness who personally observed an event in question, and the expert is unable to reconcile his inconsistent testimony other than by disparaging the witness' power of observation." *Id*. While there are minor factual differences between *Badalamenti* and the instant case, ultimately, those differences are not dispositive.

The major distinction between the instant case and *Badalamenti* is that, in the latter, the plaintiff's expert was reviewing, and expressing skepticism over, an echocardiogram conducted and interpreted by a practitioner, whose results were confirmed by similar tests under the auspices of other practitioners, none of whom was the defendant cardiologist actually accused of committing malpractice. 237 Mich App at 286-288. In contrast, it was the accounts of Aucilino, whom Bindschatel identifies as the errant practitioner, that came under Austin's scrutiny and skepticism in this case. The trial court recognized this distinction, concluded that Traverse Anesthesia thus fell short of presenting "established facts" for purposes of applying that aspect of *Badalamenti*, and explained that "it is possible that a participant in a lawsuit will say things that color the facts differently [from] what a fair statement would be." The court's reasoning in this regard was sound. In *Badalamenti*, the defendant's version of the facts was "established" in the sense that the plaintiff's expert's skepticism was effectively directed at multiple practitioners who were not otherwise accused of any malpractice, as if speculating that they were conspiring to protect a colleague or coincidentally duplicating each other's mistakes. In this case, however, Traverse Anestheisa is attempting to characterize as "established facts" the accounts of Aucilino who was suspected of malpractice, and who thus has obvious incentives to present his own actions in the best possible light.

*Badalamenti* remains instructive, however, in that it reiterates that "negligence is not established if the evidence lends equal support to inconsistent conclusions or is equally consistent with contradictory hypotheses." 237 Mich App at 286. Here, in granting Traverse Anesthesia's motion for summary disposition, the trial court placed great emphasis on Austin's

-4-

testimony that the tracheal tear could have occurred even if Aucilino complied with the standard of care and performed the intubation with the utmost care and diligence. The trial court was specific in citing the deposition testimony it was relying on:

> *Q*. Okay. Would you agree, Doctor, that a tracheal injury, including a tracheal tear or rupture or whatever this is in this case, would you agree that that could occur, even in the absence of any malpractice or negligence on the part of the anesthesiologist?
>
> *A*. Yes.
>
> *Q*. Would you agree that it could occur even if that anesthesiologist does everything the same way he always does and the way he was trained and with the most utmost care and diligence that he can muster?
>
> *A*. Yes.

The trial court stated, "I have searched and I can't find any finding here that would exclude this nonmalpractice explanation of how the tear might have occurred, and that is also buttressed by the testimony with respect to some special factors that might make the plaintiff in this case more susceptible to this kind of tracheal damage."

Regarding those other factors, the trial court was again specific about the deposition testimony of Austin upon which it was relying:

> *Q*. So if a patient is a former smoker and has COPD, you would agree that patient is at a higher risk of tracheal injury with intubation?
>
> *A*. Yes.
>
> *Q*. And is age a risk factor?
>
> *A*. Yes. It's just a[n] older trachea. And again, you see a higher instance of tracheomalacia and atrophy of the walls of the trachea.
>
> *Q*. Is gender an issue at all in a risk assessment?
>
> *A*. Well, when it comes to gender, females generally have a smaller trachea, such that choosing the correct size of the tube in order to avoid some sort of damage to the tracheal walls must be considered. And—but as long as you choose the correct size, it would somewhat mitigate that gender bias.
>
> \* \* \*
>
> *Q*. Okay. With a history of pneumonias severe enough to be hospitalized, would that patient be at an increased risk for a tracheal injury with tracheal intubation?
>
> *A*. Yes.

* * *

*Q.* Do you know whether [Bindschatel has] ever been on steroid inhalers?

*A.* I believe so, yes.

*Q.* Can steroid inhalers increase the risk for tracheal tear, tracheal rupture, tracheal injury of any type during tracheal intubation?

*A.* Again, just the general term of tracheal injury is about all I can say that it would contribute to; not necessarily rupture or any other type. But, yeah, it generally can decrease the integrity of the tissues in general and possibly even the trachea.

* * *

*Q.* In other words, it's easier to tear or rip?

*A.* Again, tracheomalacia, yeah.

The trial court concluded as follows:

[W]hen you have two possible explanations how an injury can occur one is malpractice and one is not malpractice or there are at least other explanations that are not malpractice that the opinion that it's malpractice has to have more to it than that to show that it was due to malpractice rather than these nonmalpractice explanations that Dr. Austin agrees could well have produced the injury in this case.

In her brief on appeal, Bindschatel admits that Traverse Anesthesia "was able to get Dr. Austin to concede that some of Ms. Bindschatel's prior medical problems or personal characteristics might predispose her to a tracheal injury during an endotracheal intubation" but protests that "the trial court opted to rely upon those concessions without realizing that Dr. Austin was simply responding to carefully crafted hypothetical questions that were based solely on the anesthesiologist's self-serving testimony." However, the context of Austin's deposition testimony plainly reveals that he was not entertaining abstract hypotheticals relating to how certain personal habits or circumstances might affect a given individual's susceptibility to tracheal injury. Rather, the testimony reflects that he understood that he was being questioned specifically about Bindschatel and how her history and other circumstances might have contributed to the injury at issue. "[P]arties opposing a motion for summary disposition must present more than conjecture and speculation to meet their burden of providing evidentiary proof establishing a genuine issue of material fact." *Libralter Plastics, Inc v Chubb Group of Ins Cos*, 199 Mich App 482, 486; 502 NW2d 742 (1993). Although Bindschatel's expert plausibly opined that her injury most likely resulted from the Aucilino "turn[ing] the tube to the right, essentially clockwise 45 degrees, pointing the tip to the right side of the trachea, causing the laceration," he readily admitted that his theory was based solely on speculation and not on facts in evidence. Indeed, while it is true that, as Bindschatel contends, "[c]ause in fact may be

-6-

established by circumstantial evidence," it is equally true that circumstantial evidence must not be speculative. *Wiley v Henry Ford Cottage Hosp*, 257 Mich App 488, 496; 668 NW2d 402 (2003). Austin's testimony is precisely that—speculative.

Accordingly, we conclude that, especially in light of Bindschatel's special vulnerability to tracheal injury as the result of her age, gender, and history of smoking, COPD, bouts of pneumonia, and use of steroid inhalers, the trial court correctly recognized her theory of malpractice as lacking sufficient evidentiary support. Thus, summary disposition pursuant to MCR 2.116(C)(10) was appropriate. Additionally, while not expressly invoked by Bindschatel on appeal, we would note that any argument relating to res ipsa loquitur is also unpersuasive in light of Austin's testimony that it was possible that Bindschatel suffered the injury at issue as a result of non-negligent surgical procedures. See *Cloverleaf Car Co v Phillips Petroleum Co*, 213 Mich App 186, 193-194; 540 NW2d 297 (1995).

Affirmed.

/s/ Deborah A. Servitto
/s/ Michael F. Gadola
/s/ Colleen A. O'Brien