# STATE OF MICHIGAN

# COURT OF APPEALS

HEATHER COOPER,

     Plaintiff-Appellant,

v

BADER & SONS COMPANY, WILLIAM
PRICE, and DOES 1-10,

     Defendants-Appellees.

UNPUBLISHED
May 31, 2018

No. 338519
Eaton Circuit Court
LC No. 16-001007-CZ

Before: MURRAY, C.J., and SERVITTO and BOONSTRA, JJ.

PER CURIAM.

In this employment discrimination case, plaintiff, Heather Cooper, appeals as of right an order granting summary disposition in favor of defendants Bader & Sons Company (Bader), William Price, and Does 1-10[1]. Because the evidence relied upon by plaintiff was insufficient to establish her claims, we affirm.

This matter arises from plaintiff's brief employment with Bader. Plaintiff was hired as a service writer at Bader's Grand Ledge location on December 28, 2015, where her immediate supervisor was Price. On February 8, 2016, plaintiff contacted Bader's human resources manager, Amie Stout, with complaints concerning Price. Plaintiff told Stout that she was uncomfortable with Price's handling of warranty issues and with his crude comments. Stout was receptive to plaintiff's complaints and promised to follow up with plaintiff after looking into the matter. Plaintiff testified that she conveyed Price's comments to Stout in a general sense, describing only a few of his comments with specificity. On February 11, 2016, Stout spoke with Price and William Stegenga (the interim store manager for the Grand Ledge location) and verbally reprimanded Price, after which Price apologized to plaintiff and ceased engaging in further sexual harassment. Stout followed up with plaintiff the next day, warned that things might be awkward with Price for a time, and asked plaintiff to be patient.

---

[1] There is no indication that the Doe defendants were identified or served in this matter. All further references to "defendants" in this opinion refer to Bader and Price only.

-1-

According to plaintiff, after the February 11, 2016 meeting, Price stripped her of most of her job duties and only allowed her to answer the phone. Price also began whispering to plaintiff whenever he communicated with her. On February 17, 2016, plaintiff sent an e-mail to Stout stating that she could no longer be patient and did not believe the position was a good fit for her because of the issues she had with Price. Stout suggested that plaintiff meet with her, Price, Stegenga, and Zac Francis (the regular Grand Ledge store manager) on February 22, 2016, so they could "talk through [the problem] and move forward." Plaintiff declined, stating,

> At this time, I feel there are too many issues that I do not agree with and am really not interested in continuing to work with him. I do not want to waste any[]ones time and feel there is nothing that can be done or said short of one of us leaving that would change my mind. I have no trust, no respect and have heard and observed enough unacceptable behavior that I really would prefer not to be involved in.

When Stout asked if plaintiff was resigning, plaintiff said she felt it was her only option. Plaintiff agreed to reconsider her decision over the course of her preplanned, two-week vacation that began February 22, 2016. Plaintiff formally resigned from her position the day she was scheduled to return to work.

Plaintiff filed a complaint on September 12, 2016, alleging violations of the Elliott-Larsen Civil Rights Act (Civil Rights Act), MCL 37.2101 *et seq*., namely, sexual harassment and retaliation. Plaintiff also pleaded a count of constructive discharge and asserted three additional common-law tort claims.[2] In the course of this litigation, plaintiff maintained that Price's sexual comments were constant and pervasive, described five specific sexual comments Price made, and alleged that Price engaged in unwanted and intrusive physical contact. The comments plaintiff complains of focused on plaintiff's sexual activities with her husband, the possibility that plaintiff's 13-year-old daughter was sexually active and pregnant, and plaintiff's use of sex toys on an exercise ball in lieu of an office chair at work. Plaintiff also alleges that Price touched her shoulders, touched her leg when he stood up, leaned into her when he answered questions, and leaned back in his chair when she walked behind him. The trial court determined that plaintiff was subjected to sexual harassment during her employment with Bader but granted defendants' motion for summary disposition because plaintiff's proofs were insufficient to establish other elements of her statutory claims.

We review de novo a trial court's rulings on dispositive motions. *Robins v Garg (On Remand)*, 276 Mich App 351, 361; 741 NW2d 49 (2007). "Summary disposition is appropriate under MCR 2.116(C)(10) if there is no genuine issue regarding any material fact and the moving

---

[2] Plaintiff's common-law tort claims are not at issue in this appeal. Although plaintiff presented arguments concerning the trial court's dismissal of some of her common-law claims in her appellate reply brief, she failed to challenge the trial court's dismissal of those claims in her primary appellate brief. An appellant may not raise an issue for the first time in a reply brief. *Bronson Methodist Hosp v Mich Assigned Claims Facility*, 298 Mich App 192, 199; 826 NW2d 197 (2012). Accordingly, we decline to address the merits of these arguments.

party is entitled to judgment as a matter of law." *Dancey v Travelers Prop Cas Co of America*, 288 Mich App 1, 7; 792 NW2d 372 (2010) (quotation marks and citation omitted). A court ruling on a motion under MCR 2.116(C)(10) must consider the "pleadings, affidavits, depositions, admissions, and other admissible evidence submitted by the parties in the light most favorable to the nonmoving party." *Robins*, 276 Mich App at 361. When the nonmoving party has the ultimate burden of proof at trial, the moving party can satisfy its burden of production under MCR 2.116(C)(10) by "submit[ting] affirmative evidence that negates an essential element of the nonmoving party's claim, *or* by demonstrat[ing] to the court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim." *Lowrey v LMPS & LMPJ, Inc*, 500 Mich 1, 7; 890 NW2d 344 (2016) (quotation marks and citation omitted; alterations in original). If the nonmoving party fails to produce evidence sufficient to demonstrate an essential element of its claim, the moving party is entitled to summary disposition. *Id*. at 9.

As an initial matter, the trial court correctly analyzed plaintiff's constructive discharge claim as an aspect of plaintiff's other theories of liability under the Civil Rights Act. Although constructive discharge is often raised as a separate count in actions involving employment disputes, it is not a separate cause of action in and of itself. *Vagts v Perry Drugs Stores, Inc*, 204 Mich App 481, 487; 516 NW2d 102 (1994). "Thus, an underlying cause of action is needed where it is asserted that a plaintiff did not voluntarily resign but was instead constructively discharged." *Id*.

Turning to plaintiff's statutory claims, the protections afforded by the Civil Rights Act extend to employment discrimination on the basis of sex. *Chambers v Trettco, Inc*, 463 Mich 297, 309; 614 NW2d 910 (2000). MCL 37.2103(i) expressly includes sexual harassment as a form of prohibited discrimination on the basis of sex, and defines sexual harassment as:

> [U]nwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct or communication of a sexual nature under the following conditions:
>
> (*i*) Submission to the conduct or communication is made a term or condition either explicitly or implicitly to obtain employment . . . .
>
> (*ii*) Submission to or rejection of the conduct or communication by an individual is used as a factor in decisions affecting the individual's employment . . . .
>
> (*iii*) The conduct or communication has the purpose or effect of substantially interfering with an individual's employment . . . , or creating an intimidating, hostile, or offensive employment . . . environment.

"Sexual harassment that falls into one of the first two of these subsections is commonly labeled quid pro quo harassment," while "[s]exual harassment that falls into the third subsection is commonly labeled hostile environment harassment." *Chambers*, 463 Mich at 310.

A plaintiff pressing a claim of quid pro quo harassment bears the burden of establishing two elements by a preponderance of the evidence: "(1) that she was subject to any of the types of

unwelcome sexual conduct or communication described in the statute, and (2) that her employer or the employer's agent used her submission to or rejection of the proscribed conduct as a factor in a decision affecting her employment." *Id*. (quotation marks and citation omitted). Vicarious liability on the part of the employer exists as a matter of law in cases involving quid pro quo harassment because the harasser necessarily uses the delegated power of the employer to "alter the terms and conditions of employment." *Id*. at 311. The trial court correctly found, and the parties do not appear to dispute, that plaintiff presented sufficient evidence concerning the first element. Instead, plaintiff argues that the trial court erred by finding that plaintiff's rejection of Price's harassment was not used as a factor in a decision affecting her employment. Specifically, plaintiff maintains Price stripped her of job duties and began his "whispering treatment" because she reported his behavior to human resources.

With respect to her job duties, plaintiff asserted in her complaint that Price "progressive[ly] eliminate[ed] all of her job duties" after learning of her report to Stout. However, when asked about the duties that were purportedly taken away, plaintiff vaguely testified that "[t]he only thing that I didn't get in trouble for was answering the phone." She explained that she could no longer finish work orders or talk to warranty companies or call customers because Price now did that, but the balance of her job duties—filing, inputting warranty information, scheduling trucking, and assisting with payroll—were not discussed in the deposition excerpts that were provided to the lower court. There is no indication in the record that plaintiff's other responsibilities changed following her report to human resources. Moreover, defendants presented computer logs showing that plaintiff did, in fact, continue to process work orders in the week following Price's meeting with Stout and Stegenga. An accompanying affidavit explained that the reduced volume of work orders was attributable to an overall slowdown in business at the Grand Ledge store during the relevant time.

In the context of other employment discrimination prohibited by the Civil Rights Act, this Court has explained,

> Although there is no exhaustive list of adverse employment actions, typically it takes the form of an ultimate employment decision, such as a termination in employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation. [*Peña v Ingham Co Rd Comm*, 255 Mich App 299, 312; 660 NW2d 351 (2003) (quotation marks and citation omitted).]

The evidence presented to the trial court suggests that only one of plaintiff's job duties was altered after her complaint, and even that duty was not completely "stripped" as plaintiff contends. In other words, there is no indication that Price used plaintiff's complaint as a factor in any type of adverse employment decision, because plaintiff's responsibilities were not significantly diminished. Nor can Price's alleged "whisper treatment" be construed as a decision affecting plaintiff's employment. Even if plaintiff had difficulty hearing Price's instructions, quiet communication is simply not the type of employment decision contemplated by the Civil Rights Act.

Plaintiff also alleges that her rejection of Price's behavior ultimately led to her constructive discharge. "A constructive discharge is established where an employer deliberately makes an employee's working conditions so intolerable that the employee is forced into an involuntary resignation or, stated differently, when working conditions become so difficult or unpleasant that a reasonable person in the employee's shoes would feel compelled to resign." *Vagts*, 204 Mich App at 487 (quotation marks and citation omitted). Plaintiff testified that after Price was verbally reprimanded on February 11, 2016, he stopped engaging in any sexually harassing behavior. Nonetheless, he reduced her job duties and began the "whispering piece of it[.]" As a result, she felt that resigning was her only option because she was "miserable," "[n]obody else had been talked to about it," and she did not believe anything would change. Setting aside the fact that Bader was still in the process of investigating plaintiff's complaints,[3] we do not believe that any reasonable factfinder could conclude that a reduction in one aspect of plaintiff's workload, coupled with whispered instructions, created work conditions that were so difficult or unpleasant that a reasonable person would feel compelled to resign. Accordingly, the trial court correctly found that plaintiff was not constructively discharged. Furthermore, because plaintiff's rejection of Price's sexual harassment was not used as a factor in any other decision affecting her employment, the trial court correctly dismissed plaintiff's quid pro quo harassment theory.

To establish a hostile environment claim, the plaintiff must prove five elements by a preponderance of the evidence:

(1) the employee belonged to a protected group;

(2) the employee was subjected to communication or conduct on the basis of sex;

(3) the employee was subjected to unwelcome sexual conduct or communication;

(4) the unwelcome sexual conduct or communication was intended to or in fact did substantially interfere with the employee's employment or created an intimidating, hostile, or offensive work environment; and

(5) respondeat superior. [*Chambers*, 463 Mich at 311 (quotation marks and citation omitted).]

The trial court found that plaintiff satisfied her burden with respect to the first three elements and that a question of fact "may" exist regarding the fourth element. However, it determined that plaintiff's hostile environment claim failed as a matter of law because her proofs were insufficient to establish respondeat superior. Plaintiff argues that the trial court erred

---

[3] As noted earlier, Stout recommended a group meeting with herself, plaintiff, Price, and the interim and regular store managers. Although plaintiff later explained that she was too embarrassed to discuss the matter with a panel of men, including her alleged harasser, plaintiff stated in her email that she declined to participate in the meeting because there were "too many issues that [she did] not agree with" and she was not interested in continuing to work with Price.

because the evidence demonstrated that Bader failed to promptly and thoroughly investigate her complaint or implement an adequate remedy. Plaintiff contends that when she complained about Price's behavior, Bader was on notice that Price was a "serial harasser" because her predecessor made a similar complaint during an exit interview. Thus, according to plaintiff, Bader had a heightened duty to prevent future harassment and failed in that regard. Defendants, on the other hand, argue that Price's behavior was not severe enough to create a hostile work environment and that Bader's prompt remedial action precludes liability under a hostile environment theory.

With respect to the fourth element, the trial court did not articulate its reason for concluding that a question of fact existed (or "may" exist). This element is at the heart of a hostile environment claim, as it looks at whether "one or more supervisors or co-workers create[d] an atmosphere so infused with hostility toward members of one sex that they alter[ed] the conditions of employment for them." *Radtke v Everett*, 442 Mich 368, 385; 501 NW2d 155 (1993) (quotation marks and citation omitted). "[W]hether a hostile work environment existed [is] determined by whether a reasonable person, in the totality of circumstances, would have perceived the conduct at issue as substantially interfering with the plaintiff's employment or having the purpose or effect of creating an intimidating, hostile, or offensive employment environment." *Id*. at 394. Here, plaintiff described five comments made by Price and alleged that he engaged in inappropriate physical contact on several occasions. This conduct occurred over a period of approximately six weeks. Given the number of instances in which plaintiff was subjected to verbal or physical contact that could be viewed as sexual in nature in this short time frame, reasonable minds could differ as to whether Price's conduct created an intimidating, hostile, or offensive employment environment. Therefore, the trial court correctly found that a question of fact existed regarding the fourth element.

The fifth element — respondeat superior — requires that the plaintiff show some level of fault on the part of the employer. *Chambers*, 463 Mich at 311. An employer is not liable for the acts of its agent "if it adequately investigated and took prompt and appropriate remedial action upon notice of the alleged hostile work environment." *Id*., quoting *Downer v Detroit Receiving Hosp*, 191 Mich App 232, 234; 477 NW2d 146 (1991) (quotation marks omitted). In other words, the employee must show that "the employer knew or should have known of the harassment in question and failed to take prompt remedial action[.]" *Sheridan v Forest Hills Pub Sch*, 247 Mich App 611, 621; 637 NW2d 536 (2001) (quotation marks and citation omitted). "[N]otice of sexual harassment is adequate if, by an objective standard, the totality of the circumstances were such that a reasonable employer would have been aware of a substantial probability that sexual harassment was occurring." *Chambers*, 463 Mich at 319.

Plaintiff gave actual notice of Price's harassment to Bader by alerting its human resources manager on the evening of February 8, 2016. Stout was receptive to plaintiff's complaint and plaintiff admitted to disclosing everything she wanted to during their first phone conversation. However, plaintiff did not provide the details she later disclosed in the course of litigation. As plaintiff explained,

> I don't recall the exact details or how many things I reported to her. It was a general conversation, "This is what's going on. This is what I have issues with. He makes me uncomfortable. He has a lot of crude remarks." I told her about the

sex toy things, I told her about my daughter and, again, a general conversation. I didn't go into details on everything.

Thus, although plaintiff placed Bader on notice of the harassment, she did not convey the extent of the harassment she later alleged in her lawsuit.

On February 11, 2016, Stout and Stegenga discussed plaintiff's complaint with Price, verbally reprimanded him, and advised Price that the matter would be investigated further. Stout followed up with plaintiff the next day, warned that things might be awkward with Price for a time, and asked plaintiff to be patient; plaintiff agreed. When asked if she was satisfied with Stout's action at that point, plaintiff said: "From what [Stout] told me, yeah, I guess. I didn't know what else to expect at that point." Plaintiff admitted that Price's sexual harassment ceased after the February 11, 2016 meeting.

The trial court did not err by concluding that plaintiff failed to prove her hostile environment claim because the evidence showed that Bader took prompt and effective remedial action. Plaintiff makes much of the fact that her predecessor complained of similar treatment during an exit interview. However, Price was reprimanded following that incident and Bader did not have reason to know that sexual harassment continued to occur until plaintiff contacted Stout on February 8, 2016. Although plaintiff presented some evidence suggesting that other employees may have observed some of Price's offensive behavior, there is no indication that those employees reported Price's behavior to Bader's managers or that Price's harassment was so pervasive that Bader should have been aware of it. In any event, when Bader learned that plaintiff was experiencing sexual harassment, it promptly intervened and took action that caused the sexual harassment to cease. Price's conduct after February 11, 2016, cannot be construed as *unwelcome sexual conduct or communication* that substantially interfered with plaintiff's employment or created an intimidating, hostile, or offensive work environment. Even if it could be viewed as such, Bader continued its efforts to resolve the problem by proposing a group meeting, which plaintiff declined to participate in without explaining the basis for her discomfort. Plaintiff then resigned before any alternative remedies could be explored. As such, plaintiff cannot demonstrate fault on the part of Bader based on its response to her complaint.

Lastly, plaintiff asserted a retaliation claim as an additional or alternative ground for liability under the Civil Rights Act. "To establish a prima facie case of retaliation, a plaintiff must show: (1) that he [or she] engaged in a protected activity; (2) that this was known by the defendant; (3) that the defendant took an employment action adverse to the plaintiff; and (4) that there was a causal connection between the protected activity and the adverse employment action." *Major v Village of Newberry*, 316 Mich App 527, 552-553; 892 NW2d 402 (2016) (quotation marks and citation omitted). Plaintiff alleges that she engaged in a protected activity by opposing Price's sexual harassment and that when he learned of her complaint, Price retaliated against her. According to plaintiff, Price stripped her of job duties, began his "whispering treatment," and caused her constructive discharge. We disagree. For the reasons already explained, the evidence presented to the trial court did not demonstrate that plaintiff was

subjected to an adverse employment action or that she was constructively discharged as a result of her complaint. Accordingly, plaintiff failed to satisfy her burden with respect to the third element and the trial court properly dismissed her retaliation claim.

Affirmed.

/s/ Christopher M. Murray
/s/ Deborah A. Servitto
/s/ Mark T. Boonstra