*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

MICHELLE JONES, Personal Representative of the
ESTATE OF TONY L. JONES,

        Plaintiff-Appellant,

v

JAMAL ZARGHAMI, M.D., and HEART
CARDIOLOGY CONSULTANTS, P.C., doing
business as HEART CARDIOLOGY
CONSULTANTS,

        Defendants-Appellees.

UNPUBLISHED
April 17, 2025
1:44 PM

No. 362644
Oakland Circuit Court
LC No. 2019-178140-NH

ON REMAND

Before: GADOLA, C.J., and BORRELLO and BOONSTRA, JJ.

PER CURIAM.

This case returns to us on remand from our Supreme Court. The Supreme Court reversed in part and vacated Parts III and IV of our opinion, finding this Court erred in holding that plaintiff's theory of causation contradicted established facts and in applying the analysis in *Badalamenti v William Beaumont Hosp-Troy*, 237 Mich App 278; 602 NW2d 854 (1999), lv den 463 Mich 980 (2001). We reverse and remand.

## I. FACTS

This is a medical malpractice case in which the trial court granted summary disposition to defendants, holding that plaintiff could not prove the element of causation. This Court affirmed, with Judge Borrello dissenting. *Jones v Zarghami*, unpublished per curiam opinion of the Court of Appeals, issued June 27, 2024 (Docket No. 362644) ("*Jones I*"). Our Supreme Court reversed in part, vacating Parts III and IV of this Court's opinion, and remanded to this Court for reconsideration of whether the trial court erred in granting summary disposition under MCR 2.116(C)(10) on causation grounds. *Jones v Zarghami*, ___ Mich ___; 14 NW3d 430 (2024).

-1-

The facts of this case were detailed in *Jones I*, unpub op at 1-4. In summary, plaintiff's decedent, Tony L. Jones, suddenly went into cardiac arrest and died in the hospital two days after undergoing bariatric surgery. The autopsy revealed Jones's cause of death was a pulmonary embolism (PE) due to deep vein thrombosis (DVT), which is when a blood clot forms in a deep vein that travels to the lungs. The medical examiner noted in the autopsy report that the decedent's pulmonary arteries were "filled with emboli extending from the large to medium sized vessels" and that "[d]issections of both legs reveal deep leg veins thrombosis." On the death certificate, the medical examiner stated that the approximate time between the onset of the PE due to the DVT and the decedent's death was "Secs-Mins."

Plaintiff initiated this malpractice action against defendant Dr. Zarghami, the cardiologist who cleared Jones for surgery, and his practice, defendant Heart Cardiology Consultants, P.C. Plaintiff's complaint alleged Dr. Zarghami breached the standard of care by failing to refer Jones for a venous doppler ultrasound before clearing him for the bariatric surgery. According to the medical records, Dr. Zarghami did not perform any additional testing to rule out DVT. In support of her claim, plaintiff presented the testimony of Dr. Raphael Bonita, who stated that the observations documented by Dr. Zarghami during the decedent's physical examination suggested the presence of a chronic condition and warranted further evaluation for DVT. Similarly, plaintiff's expert Dr. Hossein Ardehali testified in his deposition that he agreed that Jones died from PE due to DVT, but he disagreed that the DVT formed over seconds and minutes, as the medical examiner concluded. Dr. Ardehali stated that the blood clots in the decedent's legs did not happen overnight; they were "present over several days, maybe months." Dr. Werner Spitz testified that Jones showed symptoms of DVT during his visit with Dr. Zarghami such as edema, or swelling in the legs, and shortness of breath. In contrast, defendants' experts agreed with the medical examiner that the DVT was of recent origin, and Jones did not show symptoms of DVT when he was seen by Dr. Zarghami.

In our previous opinion, we held that the trial court correctly granted summary disposition to defendants on the basis that plaintiff could not prove causation, i.e., that Dr. Zarghami's failure to refer Jones for an ultrasound was a cause-in-fact of decedent's fatal PE. This Court cited *Badalamenti*, 237 Mich App 278 for the rule that a plaintiff cannot overcome summary disposition if its theory of the case is based solely on speculation that is not in line with the established facts. We found that plaintiff's theory that the DVTs were present when Dr. Zarghami examined Jones was not in line with the established fact that the PE developed "Secs-Mins" before decedent's death, as the medical examiner found. However, following reconsideration, it is apparent the medical examiner's conclusion was not established fact, but rather a conclusion or theory drawn from the established facts. Plaintiff's experts, on the other hand, have drawn a different conclusion from the established facts, which creates a genuine issue of material fact that precludes summary disposition.

## II. DISCUSSION

## A. STANDARD OF REVIEW

Defendants moved for summary disposition in the trial court under MCR 2.116(C)(10). This Court reviews de novo a trial court's ruling on a motion for summary disposition. *El-Khalil*

*v Oakwood Healthcare, Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019). A motion under this subrule tests the factual sufficiency of the complaint. *Id*. at 160. In reviewing the motion, the court must consider affidavits, pleadings, depositions, admissions, and other evidence produced by the parties, in the light most favorable to the party opposing the motion. *Id*. If the proffered evidence fails to establish a genuine issue of material fact, the moving party is entitled to judgment as a matter of law. *Innovation Ventures v Liquid Mfg*, 499 Mich 491, 507; 885 NW2d 861 (2016).

B. ANALYSIS

"In a medical malpractice case, the plaintiff bears the burden of proving: (1) the applicable standard of care, (2) breach of that standard by defendant, (3) injury, and (4) proximate causation between the alleged breach and the injury." *Teal v Prasad*, 283 Mich App 384, 391; 772 NW2d 57 (2009) (citation and quotation marks omitted). "[A] plaintiff must establish both factual causation, i.e., the defendant's conduct in fact caused harm to the plaintiff, and legal causation, i.e., the harm caused to the plaintiff was the general kind of harm the defendant negligently risked." *Ray v Swager*, 501 Mich 52, 64; 903 NW2d 366 (2017) (internal quotation marks omitted). A court must first find that the defendant's negligence was a cause in fact of the plaintiff's injuries before it can hold that the defendant's negligence was the proximate cause of those injuries. *Craig v Oakwood Hosp*, 471 Mich 67, 87; 684 NW2d 296 (2004).

A valid theory of causation must be based on facts in evidence. *Id*. "[A] plaintiff establishes that the defendant's conduct was a cause in fact of his injuries only if he sets forth specific facts that would support a reasonable inference of a logical sequence of cause and effect." *Id*. The evidence "need not negate all other possible causes" but must "exclude other reasonable hypotheses with a fair amount of certainty." *Id*. at 87-88. "[T]he plaintiff must present *substantial evidence* from which a jury may conclude that more likely than not, but for the defendant's conduct, the plaintiff's injuries would not have occurred." *Badalamenti v William Beaumont Hosp-Troy*, 237 Mich App 278, 285; 602 NW2d 854 (1999) (citation omitted). "[A]n expert's opinion is objectionable where it is based on assumptions that are not in accord with the established facts." *Id*. at 286 (citation omitted).

Plaintiff has produced substantial evidence to support her theory to demonstrate that there is a genuine issue of material fact as to causation. Plaintiff's theory is that Jones showed signs of DVT when he was seen by Dr. Zarghami, which went undiagnosed because Dr. Zarghami failed to refer him for an ultrasound. At the time Jones was examined by Dr. Zarghami, Jones did not display some symptoms associated with a DVT in the legs, such as redness or warmth of the skin. However, Dr. Zarghami agreed that there was edema or swelling in the right leg, as well as less swelling in the left leg. This difference in swelling of the legs was a possible symptom of a DVT condition. Dr. Spitz testified at his deposition that the localized edema or swelling and shortness of breath Dr. Zarghami observed in the March 2018 visit suggested that Jones could have been "already shooting emboli at that" time, because those were symptoms of DVT. Dr. Spitz believed that Jones probably continued to develop blood clots until his death. Dr. Bonita also found that because there was no change in Jones's swollen leg from the February visit to the March visit, this supported referring Jones for an ultrasound under the standard of care.

Defendants argue there were other possible explanations for the swelling in the decedent's legs at the time that Dr. Zarghami examined him. Defendants argue that obesity, medication side effects, or chronic venous insufficiency caused the leg swelling. However, plaintiff's evidence "need not negate all other possible causes" of the decedent's death. See *Craig*, 471 Mich at 87-88. Plaintiff has countered defendant's arguments with evidence that if one or all of those conditions existed, they likely would have caused swelling to both legs, not just one. Plaintiff's experts agree that when a DVT occurs, it typically results in the affected leg swelling, not both legs. Accordingly, plaintiff has offered evidence to exclude other reasonable hypotheses offered by defendants.

Furthermore, plaintiff has put forth sufficient evidence to create a question of fact as to whether the decedent's DVT developed within seconds to minutes before his death.[1] Although plaintiff's experts disagreed with the medical examiner and defendants' experts regarding the onset of the DVT, this disagreement does not contradict any established fact. See *Robins v Garg*, 276 Mich App 351, 363; 741 NW2d 49 (2007) (experts disagreed with the medical examiner's conclusion but agreed with the objective findings). The medical examiner's conclusion was based on his objective findings from the autopsy, and so is plaintiff's experts' conclusion. Plaintiff has provided substantial evidence that a DVT could not have formed within seconds to minutes. Plaintiff is not relying on mere speculation or conjecture with regard to the factual cause of Jones's death; the experts' testimony is based on Jones's medical record and objective findings and photographs from the autopsy. Viewing this evidence in the light most favorable to plaintiff shows that a question of fact exists as to whether Jones had a DVT when Dr. Zarghami evaluated him. Therefore, defendants are not entitled to summary disposition.

We reverse the trial court's order granting summary disposition for defendants and remand for further proceedings consistent with this opinion.

/s/ Michael F. Gadola
/s/ Stephen L. Borrello
/s/ Mark T. Boonstra

---

[1] Whether the PE developed within seconds or minutes of decedent's death is largely irrelevant, it seems to us. The PE that caused decedent's death resulted from his DVT. It was the failure to test for and diagnose decedent's DVT, which may have been present for months before decedent's surgery, that plaintiff alleges was malpractice causing decedent's death. Had decedent's DVT been properly diagnosed and treated, plaintiffs allege, there is a strong likelihood that a PE would not have occurred during surgery.