# STATE OF MICHIGAN

# COURT OF APPEALS

ROBERT FILIATRAULT and MARY CHRISTY
FILIATRAULT,

UNPUBLISHED
July 18, 2017

Plaintiffs-Appellees,

v

Nos. 331540; 331541
Lapeer Circuit Court
LC No. 2013-047015-NH

KATHLEEN M. PERKINS, D.O., MCLAREN
MEDICAL GROUP, PLC, a/k/a MCLAREN
MEDICAL MANAGEMENT, INC, d/b/a
MCLAREN HEALTH CARE CORPORATION,
d/b/a MCLAREN LAPEER REGION, d/b/a
LAPEER REGIONAL MEDICAL CENTER,
ASHA J. DOWNS, D.O., and NORTH
OAKLAND EAR NOSE & THROAT CENTERS,
PC,

Defendants-Appellants.

Before: MURPHY, P.J., TALBOT, C.J., and O'CONNELL, J.

PER CURIAM.

In this medical malpractice action, defendants Kathleen M. Perkins, D.O., McLaren Medical Group (McLaren), Asha J. Downs, D.O., and North Oakland Ear Nose & Throat Centers, PC (North Oakland ENT), appeal by leave granted[1] the trial court's order denying their motions for summary disposition. On appeal, defendants argue that they were entitled to judgment as a matter of law because plaintiffs Robert Filiatrault and Mary Christy Filiatrault failed to proffer admissible evidence concerning proximate causation. We agree that plaintiffs did not present admissible evidence concerning one of their two theories of professional negligence. Accordingly, we affirm in part, reverse in part, and remand for further proceedings.

---

[1] *Filiatrault v Perkins*, unpublished order of the Court of Appeals, entered April 7, 2016 (Docket No. 331540); *Filiatrault v Perkins*, unpublished order of the Court of Appeals, entered April 8, 2016 (Docket No. 331541).

-1-

# I. BACKGROUND

This matter arises from treatment provided to Robert by Perkins and Downs before he was diagnosed with laryngeal cancer. Robert first presented to Perkins, a family medicine practitioner, in December 2010 with a primary complaint concerning episodes of nausea that caused him to gag and occasionally cough up mucus. Robert also reported tremors, nasal drainage, and sweating during these episodes, which had been occurring approximately once a week for approximately a month. It is undisputed that Robert was a former smoker and had a history of chronic alcohol abuse. In the following months, Perkins prescribed various medications to treat Robert's symptoms and eventually referred him to Downs's otolaryngology practice. Perkins also ordered a chest CT scan, which was performed on November 3, 2011. It did not reveal any significant abnormalities.

Downs examined Robert on November 4, 2011. Her physical examination included use of a flexible fiberoptic scope to visualize Robert's nasal cavity and throat, including his larynx and vocal cords. Downs did not observe any abnormal movement or hemorrhage in Robert's vocal cords, nor did she see any lesions or palpable masses. In fact, the only abnormality Downs observed was that Robert's vocal cords were red, which indicated irritation. However, she understood that Robert was employed as a law professor and later explained that professionals who speak at length often have irritated vocal cords. Downs diagnosed Robert with allergic rhinitis and laryngopharyngeal reflux. She expected that his symptoms would improve within 10 to 14 days with medication and instructed him to schedule a follow-up appointment for November 15, 2011. Robert declined to schedule an appointment at the time and did not follow up with Downs thereafter. Although he did not arrange further treatment with Downs, Robert returned to Perkins on December 29, 2011, to check the state of his blood pressure. Perkins counseled Robert to follow up with Downs and advised him to give Downs "a chance to manage and control his symptoms."

Robert's final appointment with Perkins did not take place until nearly a year later, at which point he reported that he had recently been diagnosed with stage 3 or 4 laryngeal cancer. The cancer was discovered by way of a CT scan on November 21, 2012, which showed a "slightly enhancing mass . . . measur[ing] approximately 1.7 x 1.2 x 2.5 centimeters," located at the level of the glottis. Robert underwent chemotherapy and radiation therapy between December 2012 and February 2013. As of June 2014, his oncologist said he was "cancer free," but would need to continue monitoring for possible reoccurrences. However, Robert passed away on January 7, 2016, from an unrelated cause.

Plaintiffs initiated this action on November 20, 2013, alleging claims of medical malpractice against Perkins and Downs, as well as their employers, McLaren and North Oakland ENT, respectively. Plaintiffs asserted that defendants' negligent treatment resulted in the delayed diagnosis of Robert's cancer. Although plaintiffs' complaint raised a plethora of theories as to how defendants breached their standards of care, the parties later agreed that the alleged breaches were reduced to only two theories: (1) that Perkins and Downs both failed to order a CT scan of Robert's neck in a timely manner; and (2) that Perkins and Downs both failed to inform Robert that his symptoms might be caused by cancer.

Defendants filed motions for summary disposition arguing, in pertinent part, that there was insufficient evidence that their actions or inactions were a proximate cause of the delay in Robert's diagnosis. Both relied heavily on the deposition testimony of Kenneth Tarr, D.O., the radiologist who interpreted Robert's 2011 chest CT scan. According to Tarr, part of Robert's larynx was visible in the 2011 scan, including the lower portion of his true vocal cords and the subglottic area. Tarr did not see the 2012 scan in which the cancerous mass was ultimately discovered, but was advised of its measurements and location at the level of the glottis, extending above and below the true vocal cords. Based on that undisputed description, Tarr testified that he did not see any evidence of the mass in the 2011 scan. As such, he opined that there was a very low probability that a mass would have been discovered in those areas had a CT scan of the neck been performed in November 2011. Defendants also argued that it was mere speculation to suggest that, had they informed Robert that his symptoms might be attributable to some form of cancer, he would have complied with their follow-up instructions with more diligence.

In response to defendants' motions, plaintiffs pointed to testimony from their family care expert, Thomas Huffman, M.D., as well as their otolaryngology expert, Barry Wenig, M.D. Huffman testified that the 2011 chest CT was insufficient to detect a possible abnormality in the larynx, and Wenig opined that only a CT of the larynx could properly visualize the paraglottic space. Plaintiffs characterized their case as one with conflicting expert testimony, which made summary disposition in defendants' favor inappropriate. Plaintiffs also argued that Robert's history of disregarding follow-up instructions showed that he was a noncompliant allergy patient at worst, rather than a noncompliant cancer patient. Plaintiffs also submitted an affidavit from Robert unequivocally stating that he would have "followed any and all treatment, testing and/or referral recommendations immediately," had he known he might have cancer.

The trial court found that genuine issues of material fact remained as to the elements of breach and proximate causation and entered an order denying defendants' summary disposition motions. This appeal followed.

## II. ANALYSIS

This Court reviews a trial court's rulings on summary disposition motions de novo.[2] "Summary disposition is appropriate under MCR 2.116(C)(10) if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law."[3] A trial court deciding a motion for summary disposition under this rule must consider the "pleadings, affidavits, depositions, admissions, and other admissible evidence submitted by the parties in the light most favorable to the nonmoving party."[4] When the nonmoving party has the ultimate burden of proof at trial, the moving party can satisfy its burden of production under

---

[2] *Robins v Garg (On Remand)*, 276 Mich App 351, 361; 741 NW2d 49 (2007).

[3] *Dancey v Travelers Prop Cas Co*, 288 Mich App 1, 7; 792 NW2d 372 (2010), quoting *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003).

[4] *Robins (On Remand)*, 276 Mich App at 361.

MCR 2.116(C)(10) by " 'submit[ting] affirmative evidence that negates an essential element of the nonmoving party's claim,' or by 'demonstrat[ing] to the court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim.' "[5] If the nonmoving party fails to produce evidence sufficient to demonstrate an essential element of its claim, the moving party is entitled to summary disposition.[6]

In every medical malpractice action, the plaintiff bears the burden of proving four elements: "(1) the applicable standard of care, (2) breach of that standard of care by the defendant, (3) injury, and (4) proximate causation between the alleged breach and the injury."[7] As an initial matter, we note that in articulating their statements of the questions presented on appeal, defendants explicitly limited this Court's review to the propriety of the trial court's ruling on the issue of proximate causation. As such, to the extent that defendants contend that they did not breach their respective standards of care, that issue is not properly before this Court.[8] Likewise, we will not opine on the viability of the standard of care urged by plaintiffs' experts. Our opinion in this matter is strictly limited to the issue of proximate causation under the narrow facts presented.

"Proximate cause is a term of art that encompasses both cause in fact and legal cause."[9] The primary issue in this matter involves whether plaintiffs presented sufficient evidence to satisfy the cause-in-fact prong of this element, which requires consideration of the following principles:

> Generally, an act or omission is a cause in fact of an injury only if the injury could not have occurred without (or 'but for') that act or omission." Cause in fact may be established by circumstantial evidence, but the circumstantial evidence must not be speculative and must support a reasonable inference of causation. " 'All that is necessary is that the proof amount to a reasonable likelihood of probability rather than a possibility. The evidence need not negate all other possible causes, but such evidence must exclude other reasonable hypotheses with a fair amount of certainty.' " Summary disposition is not appropriate when the plaintiff offers

---

[5] *Lowrey v LMPS & LMPJ, Inc*, 500 Mich 1, 7; 890 NW2d 344 (2016), quoting *Quinto v Cross & Peters Co*, 451 Mich 358, 362; 547 NW2d 314 (1996) (alteration in original).

[6] *Lowrey*, 500 Mich at 9.

[7] *Elher v Misra*, 499 Mich 11, 21; 878 NW2d 790 (2016), quoting *Locke v Pachtman*, 446 Mich 216, 222; 521 NW2d 786 (1994).

[8] See *Ypsilanti Fire Marshal v Kircher*, 273 Mich App 496, 543; 730 NW2d 481 (2007) (stating that an issue is abandoned if it is not specifically raised in an appellant's statement of the question presented).

[9] *Robins (On Remand)*, 276 Mich App at 362 (quotation marks and citation omitted).

evidence that shows "that it is more likely than not that, but for defendant's conduct, a different result would have [been] obtained."[10]

It is undisputed that plaintiffs' claims rested on two theories of professional negligence. The first is that Perkins and Downs both failed to order a CT scan of the neck in a timely manner. Noting the competing opinions of the experts, the trial court found that reasonable minds could differ as to whether the failure to order an earlier CT scan of the neck was a proximate cause of plaintiffs' damages. We conclude that the trial court erred in this regard. When deciding a motion for summary disposition under MCR 2.116(C)(10), the court may only consider substantively admissible evidence offered by the parties.[11] Pursuant to MRE 702,

> If the court determines that scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise if (1) the testimony is based on sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.[12]

Importantly, "Where the subject of the proffered testimony is far beyond the scope of an individual's expertise—for example, where a party offers an expert in economics to testify about biochemistry—that testimony is *inadmissible* under MRE 702."[13]

The parties do not seem to dispute that Huffman and Wenig were qualified experts in their respective fields of family medicine and otolaryngology. Huffman testified that when Robert's symptoms continued to persist, the standard of care required Perkins to coordinate a CT of the neck by early 2012. Similarly, Wenig opined that Downs should have ordered a CT scan of the neck to rule out the possibility of cancer in the larynx at the time of Robert's November 4, 2011 examination. Both experts were aware that a chest CT was performed on November 3, 2011, but noted that such a scan would not sufficiently visualize the entirety of Robert's larynx. Although plaintiffs placed great emphasis on this point in the lower court, the adequacy of the 2011 CT scan for purposes of satisfying the standard of care is not dispositive of whether Perkins's and Downs's alleged negligence was a proximate cause of plaintiffs' damages. Rather, the dispositive question is whether the evidence offered by plaintiffs created a question of fact as to whether it is more probable than not that Robert's laryngeal cancer would have been detected earlier had Perkins and Downs ensured that a CT of the neck was obtained when they treated Robert.

---

[10] *Id*. (citations omitted).

[11] *Pioneer State Mut Ins Co v Dells*, 301 Mich App 368, 377; 836 NW2d 257 (2013).

[12] *Albro v Drayer*, 303 Mich App 758, 761; 846 NW2d 70 (2014), quoting MRE 702.

[13] *Albro*, 303 Mich App at 762, quoting *Gilbert v DaimlerChrysler Corp*, 470 Mich 749, 789; 685 NW2d 391 (2004).

As already noted, plaintiffs' experts specialized in the fields of family medicine and otolaryngology. Consequently, they were not qualified to render opinions regarding the interpretation of Robert's 2011 CT scan, and any of their opinions that broached that subject were inadmissible.[14] Defendants, on the other hand, relied on the testimony of a board certified diagnostic radiologist. Although Tarr agreed that a chest CT scan would not adequately visualize the entire larynx, he also explained that the actual 2011 CT scan at issue *did* include the lower portion of Robert's larynx, including the subglottic area and part of the true vocal cords. When Robert's cancer was eventually discovered in November 2012, it was located at the glottis, extending above and below the level of the true vocal cords. But according to Tarr, the 2011 imaging did not reveal any signs of a cancerous mass or lesion in the subglottic area or true vocal cords. Thus, he was able to opine to a reasonable degree of medical certainty that there was no radiographic evidence of cancer in these structures as of November 3, 2011. Plaintiffs did not offer any *admissible* evidence to rebut Tarr's opinion. Given that Perkins and Downs last treated Robert in December 2011 and November 2011, respectively, the trial court erred by finding that the differing opinions of the parties' experts created a genuine issue of material fact as to whether their failure to order an earlier CT scan of the neck was a proximate cause of plaintiffs' damages. Plaintiffs simply did not offer sufficient evidence demonstrating that had a CT scan of the neck been performed at the time, it more likely than not would have resulted in the earlier detection of Robert's laryngeal cancer. Accordingly, the trial court erred by denying defendants' summary disposition motions with respect to this theory of professional negligence.

Plaintiffs also maintained that Perkins and Downs breached their standards of care by failing to advise Robert that his symptoms might be caused by a form of cancer. In response to defendants' summary disposition motions, plaintiffs pointed to two pieces of evidence regarding proximate causation relating to this second theory of negligence: testimony from Huffman indicating that had Perkins used the word "cancer" in her follow up instructions, it "might have created a desire to be more attendant to her follow[-]up instructions," and Robert's own affidavit declaring that had he been aware of the possibility of laryngeal cancer, he "would have followed any and all treatment, testing and/or referral recommendations immediately." For various reasons, defendants argue that this theory of causation is too speculative to satisfy plaintiffs' burden of proof relative to proximate causation.

As already noted, the plaintiff in a medical malpractice action has the ultimate burden of proving that the defendant's negligence was a proximate cause of his or her damages.[15] The evidence relied upon by the plaintiff to meet this burden must "facilitate reasonable inferences of causation, not mere speculation."[16] The distinction between a reasonable inference and impermissible conjecture has been described as follows:

---

[14] See *Albro*, 303 Mich App at 762.

[15] *Elher*, 499 Mich at 21.

[16] *Skinner v Square D Co*, 445 Mich 153, 164; 516 NW2d 475 (1994), overruled in part on other grounds by *Smith v Globe Life Ins Co*, 460 Mich 446, 455 n 2; 597 NW2d 28 (1999).

As a theory of causation, a conjecture is simply an explanation consistent with known facts or conditions, but not deducible from them as a reasonable inference. There may be 2 or more plausible explanations as to how an event happened or what produced it; yet, if the evidence is without selective application to any 1 of them, they remain conjectures only. On the other hand, if there is evidence which points to any 1 theory of causation, indicating a logical sequence of cause and effect, then there is a juridical basis for such a determination, notwithstanding the existence of other plausible theories with or without support in the evidence.[17]

According to Perkins,[18] Huffman's testimony does not support plaintiffs' position because it merely hypothesizes what effect Perkins's use of the word "cancer" might have had on Robert. We agree. Huffman's opinion regarding what Robert might have done under hypothetical circumstances appears to be guesswork, rather than an inference derived from known facts or conditions. Indeed, even Huffman recognized the speculative nature of his opinion when he said, "I think if [Robert] had understood that it might be a cancer, he might have been compliant. *I cannot go further than that*."[19]

Defendants also argue that Robert's affidavit was unduly speculative. But unlike Huffman's opinion regarding Robert's potential course of conduct had he been given different information, the averments in Robert's affidavit go beyond guesswork and hypotheses. While Huffman was limited to opining what Robert *might* have done, Robert unequivocally stated that he *would* have immediately followed his physicians' instructions had he known of the possibility of cancer. In essence, defendants argue that Robert's affidavit is not based in fact, and is therefore speculative, because he can only opine about his probable conduct under circumstances that never came to pass. However, this logic would result in an insurmountable burden in any medical malpractice claim based on a "failure to warn" theory because it would be impossible to provide more than an opinion about what a person might have done in the event of a timely warning that was not actually provided. The prohibition against speculative evidence regarding causation should not be construed as a prohibition against an appropriately rendered opinion, whether that opinion is from a lay witness or an expert.[20] Admittedly, Robert's history of noncompliance with follow-up instructions provided by Perkins and Downs casts doubt upon the veracity of his affidavit. However, issues of credibility are within the purview of the fact finder at trial and should not be determined by the trial court in the context of a summary disposition

---

[17] *Skinner*, 445 Mich at 164, quoting *Kaminski v Grand Trunk Western R Co*, 347 Mich 417, 422; 79 NW2d 899 (1956).

[18] Plaintiffs only offered Huffman's testimony as evidence against Perkins and McLaren.

[19] (Emphasis added).

[20] See, e.g., *Ykimoff v Foote Mem Hosp*, 285 Mich App 80, 93-94; 776 NW2d 114 (2009) (finding a credibility question for the jury arising from a surgeon's testimony about his probable actions had the defendant hospital's nursing staff alerted him to the patient's postoperative condition sooner).

motion.[21] As such, the trial court did not err by denying defendants' summary disposition motions with respect to this theory of professional negligence.

Defendants also argue that Robert's affidavit is inadmissible because it failed to comply with the technical requirements set forth in MCR 2.119(B)(1) and because it contains hearsay in light of Robert's later death. However, because defendants did not raise these issues in the trial court, they are unpreserved.[22] This Court will not review unpreserved issues.[23] While there are exceptions to this general rule,[24] we do not believe that review is warranted in this case.

### III. CONCLUSION

In sum, we conclude that the trial court erred by denying defendants' summary disposition motions with respect to plaintiffs' first theory of negligence because plaintiffs did not proffer admissible evidence to show that, more probably than not, Robert's laryngeal cancer would have been detected earlier had defendants ordered a neck CT when they treated him. However, we disagree with defendants' preserved arguments regarding the trial court's ruling as it relates to plaintiffs' failure to warn theory and conclude that the trial court properly denied summary disposition with respect to that theory.

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ William B. Murphy
/s/ Michael J. Talbot
/s/ Peter D. O'Connell

---

[21] See *Pioneer State Mutual Ins Co*, 301 Mich App at 377 ("The trial court is not permitted to assess credibility, weigh the evidence, or resolve factual disputes, and if material evidence conflicts, it is not appropriate to grant a motion for summary disposition under MCR 2.116(C)(10).").

[22] *Hines v Volkswagen of America, Inc*, 265 Mich App 432, 443; 695 NW2d 84 (2005).

[23] *Brown v Loveman*, 260 Mich App 576, 599; 680 NW2d 432 (2004).

[24] See, e.g., *id*. ("This Court will review issues not raised below if a miscarriage of justice will result from a failure to pass on them, or if the question is one of law and all the facts necessary for its resolution have been presented, or where necessary for a proper determination of the case." (citation omitted)).